Argued and submitted March 3, ordered accordingly July 27, 1982

# NORTHWEST NATURAL GAS COMPANY et al,
*Petitioners,*

*v.*

# FRANK,
*Respondent.*

## (SC 28346)

648 P2d 1284

Bruce R. DeBolt, Northwest Natural Gas Company, argued the cause for petitioners. With him on the briefs were Harold W. Pierce, Northwest Natural Gas Company, and Gene C. Rose and W. Brian Matsuyama, Cascade Natural Gas Corporation.

William F. Gary, Solicitor General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and Christine L. Dickey, Assistant Attorney General, Salem.

Steven F. McCarrel, Portland General Electric Company, argued the cause and filed the brief for respondent-intervenor.

LENT, C. J.

## LENT, C. J.

We exercise original jurisdiction granted by Oregon Laws 1981, Chapter 792, section 7(3), to review an order of the respondent director of the Oregon Department of Energy issued pursuant to ORS 469.420 as amended by Chapter 792. Petitioners are energy resource suppliers. Respondent's order assesses a tax against petitioners based upon their prorated share of the total number of British thermal units (BTUs) of energy sold by energy resource suppliers in Oregon. Petitioners seek to have this order declared invalid as a violation of Article VIII, section 2(1)(g) and/or Article IX, section 3b of the Constitution of Oregon. Respondent defends the order as not being in conflict with these constitutional provisions.

The sole question for our consideration is whether assessments imposed under ORS 469.420(4) are "a tax * * * measured by the * * * sale * * * of oil or natural gas * * * that is subject to the provisions of section 2, Article VIII or section 3, Article IX of the Oregon Constitution * * *." (Ch 792, § 4). We hold that assessments computed on the energy-resources-sold basis under ORS 469.420(4) are a tax measured by the sale of natural gas and oil. We hold further that this tax is subject to Article VIII, section 2(1)(g) and/or Article IX, section 3b of the Constitution and, therefore, is dedicated to the Common School Fund and is not available to the Department of Energy.

## LEGISLATIVE BACKGROUND

Resolution of this dispute requires that we set forth at some length the various constitutional and statutory materials that bear on the case.

Enacted in 1971, ORS 469.420 provides that the director of the Department of Energy shall fund department activities by assessing fees against electric utilities, natural gas utilities, and petroleum suppliers, collectively energy resource suppliers. These fees are based on the ratio that the energy resources (measured in BTUs) sold by each supplier bear to the total energy resources sold by all energy resource suppliers. ORS 469.420(4).

In 1979, the Oregon legislature adopted House Joint Resolution 6 which, as Ballot Measure 3, proposed a

constitutional amendment. The amendment added paragraph (g) to Article VIII, section 2(1) and added section 3b to Article IX of the Oregon Constitution.[1] Paragraph (g) provides:

> "(1) The sources of the Common School Fund are:
>
> "* * * * *
>
> "(g) After providing for the cost of administration and any refunds or credits authorized by law, the proceeds from any tax or excise levied on, with respect to or measured by the extraction, production, storage, use, sale, distribution or receipt of oil or natural gas and the proceeds from any tax or excise levied on the ownership of oil or natural gas. However, the rate of such taxes shall not be greater than six percent of the market value of all oil and natural gas produced or salvaged from the earth or waters of this state as and when owned or produced. This paragraph does not include proceeds from any tax or excise as described in section 3, Article IX of this Constitution."

Section 3b provides:

> "Any tax or excise levied on, with respect to or measured by the extraction, production, storage, use, sale, distribution or receipt of oil or natural gas, or the ownership thereof, shall not be levied at a rate that is greater than six percent of the market value of all oil and natural gas produced or salvaged from the earth or waters of this state as and when owned or produced. This section does not apply to any tax or excise the proceeds of which are dedicated as described in sections 3 and 3a of this Article."

Our examination of the legislative background of House Joint Resolution 6 shows nothing to indicate that the legislature recognized any conflict between the proposed amendment and ORS 469.420, or considered the possibility of such a conflict.

---

[1] At the time the Oregon legislature adopted House Joint Resolution 6, Article IX of the Oregon Constitution did not contain a section 3a, so the materials to be added to that article were tentatively designated section 3a. However, subsequent to the adoption of House Joint Resolution 6, the voters in the May 1980 primary election approved a ballot measure which amended Article IX, adding a section 3a. For this reason, when the voters approved Ballot Measure 3 on the November 1980 general election ballot, the material added to Article IX was designated section 3b. For clarity, we refer to this new material throughout this opinion as section 3b.

Shortly before the 1980 general election, the Governor asked the Attorney General's opinion on several questions concerning the proposed amendment. One question was:

"Would Measure 3 require that the energy assessment imposed on oil and natural gas companies under ORS 469.420(4) be dedicated exclusively to the Common School Fund?"

The Attorney General responded "Yes." 41 Op Atty Gen 205 (1980). The Attorney General found that fees imposed under ORS 469.420(4) were an assessment "measured by" the BTUs of energy sold by energy resource suppliers, and concluded that the amendment would dedicate these revenues to the Common School Fund. 41 Op Atty Gen at 210. This was apparently the first time that state officials realized that the amendment might conflict with ORS 469.420.

The voters approved Ballot Measure 3 in the 1980 general election, making paragraph (g) and section 3b part of the Oregon Constitution.

Following the adoption of the amendment, a new question was posed to the Attorney General:

"Does subparagraph (g) of sec 2(1) of Art VIII of the Oregon Constitution apply to oil or natural gas produced outside of Oregon?"

The Attorney General responded:

"No, although this conclusion is not free from substantial doubt."

41 Op Atty Gen 552 (1981). In this second opinion, the Attorney General reconsidered portions of his earlier opinion. He recognized the problem that brings this case before us: if all receipts from assessments based on oil and natural gas sales were constitutionally dedicated to the Common School Fund, the Department of Energy could not fund itself through ORS 469.420. Though admitting that the amendment was ambiguous, the Attorney General reversed portions of his 1980 opinion and, on the basis of legislative history, concluded that the amendment did not apply to assessments on oil and natural gas captured outside of Oregon.

Because of the ambiguous language in the amendment,[2] the Attorney General cautioned against relying on his opinion and recommended that litigation be brought to resolve the question, warning that doubt would remain until this court ruled on the question. *Id* at 557.

Aware of the conflict between ORS 469.420(4) and the amendment, the 1981 legislature enacted Oregon Laws 1981, Chapter 792. Section 3 of this chapter reenacted ORS 469.420(4)(c) unchanged: the Department of Energy was to continue to compute assessments on an energy-resources-sold basis.

Section 5 is an alternative version of ORS 469.420, largely identical with the present version, but changing the basis on which assessments are to be computed. The section 5 version of ORS 469.420(4)(c) provides:

"(c) The amount assessed to an energy resource supplier shall be based on the ratio which that supplier's annual gross operating revenue derived within this state in the preceding calendar year bears to the total gross operating revenue derived within this state during that year by all energy resource suppliers. The assessment against an energy resource supplier shall not exceed five-tenths of one percent of the supplier's gross operating revenue derived within this state in the preceding calendar year. The director shall exempt from payment of an assessment any individual energy resource supplier whose calculated share of the annual assessment is less than $250."

This assessment, under section 5, based on gross revenues was not subject to the constitutional amendment.

Section 7 of Chapter 792 provided that, in his order for the biennium beginning July 1, 1981, the director should determine the amounts which would be assessed under ORS 469.420(4)(b) and (c), computed on an energy-resources-sold basis, and also under the section 5 versions

---

[2] The ambiguity in the amendment concerns the six percent limitation on taxes. Some suggest that this means only that the state can impose a maximum tax of six percent on oil and natural gas extracted within Oregon, but is not limited by the amendment itself from imposing different taxes on resources captured outside of Oregon. Others contend that the total tax on all resources, captured within or outside of Oregon, cannot exceed six percent of the value of the resources captured within Oregon. Because of our disposition of this case, we need not and do not resolve that question.

of (4)(b) and (c), computed on a gross-revenues basis. The director was initially to assess energy resource suppliers only the lesser of the two amounts. The balance was to be imposed by a later assessment after the court decided whether the Department of Energy could continue to use the energy-resources-sold basis. Subsection 7(3) provided for direct judicial review to resolve the legality of using the energy-resources-sold basis.

Section 4 of Chapter 792 provided:

> "If ORS 469.420 or any part thereof or section 7 of this Act is judicially declared to impose a tax or excise levied on, with respect to or measured by the extraction, production, storage, use, sale, distribution or receipt of oil or natural gas or levied on the ownership of oil or natural gas, that is subject to the provisions of section 2, Article VIII or section 3a, Article IX of the Oregon Constitution, ORS 469.420 is repealed and section 5 of this Act is enacted in lieu thereof."

This section thus prescribes our action should we find a conflict between the amendment and ORS 469.420.

Acting pursuant to Chapter 792, section 7, the director promulgated his biennial order on November 2, 1981. On December 31, 1981, petitioners filed their petition for review, bringing the matter before this court.

## ANALYSIS

This is a case of constitutional and statutory interpretation. The parties to the case have provided us with extensive materials from the relevant legislative histories. It is apparent that the language which the legislature employed in House Joint Resolution 6 and referred to the people as Ballot Measure 3 has effects which the drafters did not anticipate. The drafters did not consciously intend to compel the Department of Energy to change the system by which it assesses fees. The drafters, and the legislature as a whole, did not realize that it might be argued that this was one effect of the language they used in House Joint Resolution 6. Had they recognized the conflict between this language and ORS 460.420, they might well have redrafted the resolution to except assessments of the Department of Energy. The absence of such an exception appears to be the result of oversight, not a conscious decision to dedicate

assessments made under ORS 469.420 to the Common School Fund. This is, however, one effect of the language which the legislature employed and which the people adopted into the Oregon Constitution in Ballot Measure 3.

■ As a court, our role is to interpret the statutes and constitutional provisions. We do not redraft these provisions; we interpret them as the legislature has drafted them. It is axiomatic that in a case of statutory and constitutional construction, this court must give preeminent attention to the language which the legislature and the people have adopted. The statutes are the law, and while the legislative history may provide invaluable insights into the legislative process, it remains supplemental to the statutes as adopted.

■ The requirement that we give effect to the words of an enactment is doubly applicable when the law in question is a constitutional amendment adopted by the voters. There is no reliable record of what the voters intended beyond the language of the amendment itself. There are no official committees, no minutes, no formal debates. Given the fact that it is the electorate, the ultimate sovereign, which has adopted the amendment to our Constitution, we are slow to go beyond the face of the enacted language into materials not presented to the public at large.

By enacting Chapter 792, the legislature has given explicit and unambiguous instructions on how we are to deal with this case. Section 7 directs us to review the respondent director's order to determine if the assessments impose a tax which is constitutionally dedicated to the Common School Fund. If we find that the assessment computed on the energy-resources-sold basis is subject to the amendment, section 4 dictates the remedy which we are to prescribe: ORS 469.420 is automatically repealed, section 5 is established in lieu thereof, and the director must compute his assessment on the gross-revenue basis, which is not subject to the amendment.

■ Reviewing the amendment and the various statutory provisions, we find that the respondent director's assessment computed on an energy-resources-sold basis is a "tax * * * measured by the * * * sale * * * of oil or natural

gas." We further find that, as such, the assessment is a tax which Article VIII, section 2(1)(g) dedicates exclusively to the Common School Fund.

■        The respondent director concedes that at least a substantial part of the assessments made under ORS 469.420(4) are covered by the amendment. He argues that the amendment affects only taxes on oil and natural gas produced in Oregon and asks us to remodel the statutory plan so as to invalidate only that part of the tax falling on oil and natural gas produced in Oregon. We believe this argument is better addressed to the legislature. We decline to suggest whether the amendment does apply only to taxes on oil and natural gas extracted within this state because this question is not necessary to our resolution of this case. We have found that at least some of the taxes assessed on the energy-resources-sold basis are subject to Article VIII, section 2 or Article IX, section 3. Our disposition of this matter is, therefore, prescribed by Chapter 792, section 4. Section 4 provides:

"If ORS 469.420 or any part thereof or section 7 of this Act is judicially declared to impose a tax * * * measured by the * * * sale * * * of oil or natural gas * * * that is subject to the provisions of section 2, Article VIII or section 3a, Article IX of the Oregon Constitution, ORS 469.420 is repealed and section 5 of this Act is enacted in lieu thereof."

This section restricts our role to a determination of whether assessments under ORS 469.420(4) are valid. Because we find that part of the assessment plan established under that statute is not valid, the entire plan falls and is automatically replaced by the gross-revenues plan under Chapter 792, section 5.

        Attempting to save the current assessment plan, the respondent-intervenor, Portland General Electric Company, argues that the entire energy-resources-sold assessment plan is valid. The intervenor contends that the amendment applies only to future taxes and, specifically, that it does not apply at all to taxes imposed under ORS 469.420(4), because these were in effect when the amendment was adopted. In making this contention, the intervenor relies on the "Argument in Favor of Ballot Measure 3," which appeared in the 1980 Voter's Pamphlet:

*"If, at some future time, a tax is placed upon the production, storage or sale of oil or natural gas,* it will be limited to no more than six percent of the market value of the product, and the revenues derived will go exclusively to the Common School Fund. *This does not authorize or create a tax."* (Emphasis added)

Intervenor argues that this shows that taxes under ORS 469.420(4) were not taxes on production, storage or sale of oil or natural gas and, therefore, were not covered by the amendment.

While the voter's pamphlet is a source which we can consider in construing legislative enactments, we are aware of the need for caution in relying on the statements of advocates contained in the pamphlet. "Discriminating and cautious use must be made of such material because of its partisan character." *State ex rel Chapman v. Appling,* 220 Or 41, 68-69, 348 P2d 759, 772 (1960). In this instance, we find the material unpersuasive. To accept intervenor's argument, we would have to conclude that in drafting Ballot Measure 3, the legislature was aware of ORS 469.420 and concluded that it was not a tax which would be affected by the amendment. We have reviewed the legislative history of the amendment, and we believe that in drafting Ballot Measure 3, the legislature simply overlooked ORS 469.420. Those officials who prepared the argument in favor of the ballot measure did not conclude that ORS 469.420 was not a tax on the sale of oil or natural gas; they never considered the statute. Only when the Governor sought the opinion of the Attorney General as to whether the statutory assessment came within the terms of the proposed amendment did the conflict come to light. While the 1980 and 1981 opinions of the Attorney General indicate that the precise meaning of the amendment is not entirely clear, we are offered no interpretation which would put the tax levied under ORS 469.420 entirely beyond its terms, and under section 4, this is what is required to save the energy-resources-sold basis for assessments.

In summary, we hold that the assessment made under ORS 469.420(4) is a tax on energy resources sold which is subject to Article VIII, section 2(1)(g) and Article IX, section 3b of the Oregon Constitution. Therefore, by

the operation of Chapter 792, section 4, ORS 469.420 is repealed and Chapter 792, section 5 established in lieu thereof. Because of this, the order of the director is invalid insofar as it assesses taxes on the basis of energy resources sold, and valid insofar as it assesses taxes on a gross-revenue basis. Accordingly, we order the director to amend his order to assess taxes exclusively on a gross revenue basis.