## IN THE OREGON TAX COURT

Mike COMEAUX,
Roy Miller, Philip Busekist, Ramon L. Johnson,
Dori L. Kite, Rick Arnold, James D. Knight,
Sam Quitiquit, Sandy Quitiquit,
Sandra Buhrmaster Jelinski, John A. Jelinski,
C. H. Perrot, Margaret Perrot and James Plog

*v.*

## WATER WONDERLAND IMPROVEMENT DISTRICT

(TC 3144)

Roy Miller, appeared on behalf of the petitioners.

Timothy Sercombe, Preston Thorgrimson Shidler Gates & Ellis, Portland, appeared for respondent.

Decision for respondent rendered January 17, 1992.

## CARL N. BYERS, Judge.

This matter is before the court on respondent's Motion for Summary Judgment.

Petitioners are owners of property within the Water Wonderland Improvement District (WWID). WWID is a corporation organized under ORS chapter 554 to furnish water to its members. It is authorized to impose assessments on the property of its members. In this case, petitioners claim respondent has imposed (1) a special maintenance fee of $30 on all lots in the district except for seven lots in Block 57,[1] (2) a "nonuser fee" of $30 on all lots within the district, except the seven lots in Block 57, not using any water, (3) a seasonal user fee of $70 for all lots using water less than six months out of each year, (4) a full-time water fee of $144 on all lots with year-round occupancy and (5) a hook-up fee of $350. Respondent admits imposing the above fees.

Petitioners claim respondent is a unit of government within the meaning of Article XI, section 11b, of the Oregon Constitution (section 11b). Petitioners ask the court to determine whether the fees and charges described above come within that provision.[2]

Respondent's motion asserts it is not a governmental unit and, therefore, not subject to section 11b. If respondent is not a governmental unit, the assessments fees and charges cannot be "taxes" subject to limitation.

Section 11b, popularly known as Measure 5, was an initiative measure adopted by general election November 6, 1990. It imposes limits on property taxes that can be levied for schools and other government. In response to adoption of

---

[1] The seven nonuser lots are assessed no fees.

[2] Petitioners also ask for other determinations, but those questions are not pertinent to respondent's Motion for Summary Judgment.

section 11b, the 1991 Legislative Assembly enacted Oregon Laws 1991, chapter 459. This legislation adapted Oregon's property tax system to section 11b, including provisions for resolving issues arising under section 11b. Sections 25 through 27 of chapter 459, now codified as ORS 305.580 through 305.589, provide the exclusive remedies for determining the effects of section 11b. In this case, petitioners have filed under ORS 305.583(1):

> "Ten interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of section 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment imposed by a unit of government. For purposes of this section, 'interested taxpayers' means persons who are subject to the tax, fee, charge or assessment in question."

## ISSUES

Respondent's motion raises two issues. The first is whether respondent is a "unit of government" within the meaning of ORS 305.583(1). This inquiry seeks the legislature's intent in enacting the statute. The purpose of this determination is to ascertain whether the remedy afforded by that statute is available to petitioners.

The second issue is whether respondent is a "governmental unit" within the meaning of section 11b. This inquiry seeks the intent of the public in enacting the initiative measure. The purpose of this determination is to ascertain whether the fees, charges and assessments imposed by respondent are subject to the limitations of section 11b.

## STATUTORY REMEDY

In determining whether respondent is a "unit of government" within ORS 305.583(1), petitioners point to the legislature's definition of "local government unit" as found in ORS 305.589(9) of the same Act. That definition states:

> "(a)  'Local government unit' means any unit of local government, including a city, county, incorporated town or village, school district, any other special district, or any other municipal or quasi-municipal corporation, intergovernmental authority created pursuant to ORS 190.010, a district as defined in ORS 198.010 to 198.180 and 198.210 or an urban renewal agency established under ORS 457.035."

Petitioners reason that a corporation organized under ORS chapter 554 is defined as a "district" under ORS 198.110, ORS 198.180(3) and ORS 198.210(1). Since ORS 305.583 uses the terms "unit of government," "government unit," and "local government unit" interchangeably, petitioners conclude that respondent is a "government unit" within the meaning of ORS 305.583(1).

■ The court finds that respondent is a unit of government within the meaning of ORS 305.583(1). In providing remedies for taxpayers, governmental units and associations of governmental units, the legislature broadly defined "local government unit." That broad definition covers many kinds of special districts, including nonprofit corporations organized under ORS chapter 554. The court finds that the legislature intended "local government unit" to have the same meaning as a "unit of government" and "government unit." Therefore, the legislature intended to permit 10 interested taxpayers to seek a determination of the effect of the section 11b on assessments, taxes and charges of special districts like respondent.

## INTERPRETATION OF CONSTITUTION

The second issue raised by respondent's motion is what is a "governmental unit" within the meaning of section 11b(2)(b)? That provision reads:

> "A 'tax' is any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements."

■ This issue requires the court to interpret an initiative measure enacted by the people. Interpretation of an initiative measure amending the Constitution is a judicial function, not a legislative function. *Lyons v. Pearce*, 66 Or App 777, 676 P2d 905 (1984). In doing so, the court must focus on the words of the measure itself. As pointed out by the Supreme Court in *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982):

> "The requirement that we give effect to the words of an enactment is doubly applicable when the law in question is a constitutional amendment adopted by the voters. There is no

reliable record of what the voters intended beyond the language of the amendment itself. There are no official committees, no minutes, no formal debates. Given the fact that it is the electorate, the ultimate sovereign, which has adopted the amendment to our Constitution, we are slow to go beyond the face of the enacted language into materials not presented to the public at large."

■ Recognizing there is a difference between laws enacted by the legislature and laws enacted by public initiative,[3] the court seeks a meaning "consistent with common sense and with the overall purpose of the Act." *State v. Shumway*, 44 Or App 657, 662, 607 P2d 191 (1980), *aff'd* 291 Or 153, 630 P2d 796 (1981). *See also Anthony v. Veatch*, 189 Or 462, 220 P2d 493, 221 P2d 575 (1950), *appeal dismissed* 340 US 923, 71 S Ct 499, 95 L Ed 667 (1951). The legislature's interpretation of the Constitution is not binding on the court. Although the legislature defined "local government unit" for the remedies provided by statute, that definition carries little weight in determining the meaning of the term "governmental unit" as enacted by the people.

## SECTION 11b

Measure 5 was intended to grab government at every level and shake its purse. The arguments in the voter's pamphlet[4] demonstrate an awareness of the measure's far-reaching effects. While it may be difficult to say what any particular segment of the population understood about the measure, it is safe to say that they were aware the ramifications could be severe. The arguments indicate there could be a shift in tax burdens with possible benefits and detriments. They also demonstrate that the people expected state government to respond to the law by cutting expenses. This, of

---

[3] The court acknowledges that initiative measures pose special problems for judicial interpretation. *See* Eule, *Judicial Review of Direct Democracy*, 99 Yale LJ 1503 (1990). In addition to using terms with imprecise meanings, initiatives may by their sentence structure or punctuation raise questions. For example, paragraph (1) of Measure 5 proposed amending the Constitution. The use of a colon in that paragraph raises a question as to whether paragraphs (2) through (5) of the measure were intended to be part of the amendment to the Constitution.

[4] The Oregon Supreme Court observed:

"While the voter's pamphlet is a source we can consider in construing legislative enactments, we are aware of the need for caution in relying on the statements of advocates contained in the pamphlet." *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 383, 648 P2d 1284 (1982).

necessity, involves a risk of diminished services. The public voted to incur those risks to obtain property tax relief. Undoubtedly, the voters know there may need to be adjustments or corrections made.

## CHAPTER 554 ORGANIZATIONS

ORS chapter 554 authorizes corporations for irrigation, drainage, water supply or flood control. Corporations organized under this chapter may be for profit or nonprofit. Respondent is a nonprofit corporation.

Nonprofit corporations organized under ORS chapter 554 have many characteristics of "government." They are subject to public meeting laws (ORS 192.610(4)), public records law (ORS 192.410(1)), public employees' law (ORS 243.650(18)), borrowing and bond law of local government (ORS 298.001(2)), and boundary commission jurisdiction (ORS 199.420(11)). They are "public" corporations (ORS 554.050(6)) with the power of eminent domain (ORS 554.080). They can use the county treasurer to register their bonds and collect bond payments. ORS 554.120 and ORS 554.160. They can use the assessor and tax collector's office to collect assessments and charges "as other taxes are." ORS 554.130. They are given specific statutory authority to charge interest at 1.5 percent per month on amounts due to them. ORS 554.135. Their liens have priority on a parity with ad valorem taxes. ORS 554.190. They are exempt from tax as a "public body." ORS 554.320. If they are dissolved as "inactive," the county board is required to take charge of their liquidation. ORS 198.335 through 198.365. If so liquidated and their assets are insufficient to pay their debts, the county board "acting as a levying board for the district shall levy taxes, within the limits of the authority of the district, for the liquidation of the debts." ORS 198.365(3).

ORS 308.207(3) specifically defines "governmental unit" to include special districts having the power to issue bonds, which would include ORS chapter 554 organizations. The Oregon Supreme Court has expressly recognized that such organizations are "quasi-public corporations." *Rathfon v. Payette-Oregon S. Irr. Dist.*, 76 Or 606, 149 P 1044 (1915).

"A corporation so organized and possessing such powers is at least a quasi-municipal corporation and, since the act

expressly grants to such corporation the power to issue bonds, the rules applicable to the negotiability of municipal bonds would apply." *Nelson v. McAllister Dist. Imp. Co.*, 155 Or 95, 106, 62 P2d 950 (1936).

While the above badges of government are numerous, respondent possesses fundamental characteristics of a nongovernmental organization. First and foremost, ORS chapter 554 organizations have authority over land only by the unanimous agreement of all landowners affected. Other districts, such as irrigation districts, may be organized with less than full unanimity. Consequently, they impose taxes or charges on an unwilling minority. ORS chapter 554 organizations, at least initially, require unanimous consent. The statute provides for all affected landowners to mutually covenant and agree, which covenants run with the land.[5] ORS 554.170 to ORS 554.180.

Second, the participants in such organization are not citizens but "members" of the corporation. They gain or lose their membership by virtue of ownership of land. ORS 554.070(1). The statute dictates that voting power is determined by the number of acres owned. ORS 554.070(2). In this case, the respondent's articles provide for "equity interests" of the members. If, on dissolution of the corporation, assets exceed liabilities, the surplus is distributed to the members in proportion to their equity interests. While there may be some question of whether this is consistent with the status of a nonprofit corporation (*see* ORS 554.050(5)), there can be no question that such interests are the hallmark of a nongovernmental organization.

As respondent points out, ORS chapter 554 organizations have no police power and no taxing power in the traditional sense. The power of the corporation to levy assessments or charges is limited to the authority initially mutually agreed upon by all of the landowners.

---

[5] Petitioners' Memorandum in Support of Petition under B-Eng HB 2550, section 26(1), raises questions as to the completeness of respondent's organization. The memorandum asserts "there is no recorded landowner's notice" and "there is no provision in the bylaws dealing with apportionment of the assessment." However, the issues before this court are not affected by the degree of respondent's compliance with ORS chapter 554.

The court notes that ORS chapter 554 organizations are *not* subject to local budget law requirements (ORS 294.316(2)), municipal audit law (ORS 297.405(6)), or public contract and purchasing law (ORS 279.001(6)). They are not subject to the special district election laws (ORS 255.012), or other special district laws such as recall elections (ORS 198.410), ordinances and regulations (ORS 198.510), or formation and changes in organization (ORS 198.705).

In upholding the establishment of the Port of Portland, the Oregon Supreme Court observed:

> "[M]unicipal corporations or divisions exist only for the convenient administration of the government. Such organizations are instruments of the state to carry out its will. When they are authorized to levy a tax or appropriate its proceeds, the state is doing through them indirectly what it might do directly." *Cook v. The Port of Portland*, 20 Or 580, 588, 27 P 263 (1891).

In that opinion, the court mentioned some of the distinguishing features between government and private corporations. For example, in sustaining the Port of Portland as a municipal corporation, the court stated:

> "It possesses none of the features of a private corporation. There is no stock to be subscribed. Its members are citizens, not stockholders. There is no acceptance necessary, and its powers and very existence are at the will of the legislature. * * * There is no power to take tolls or make profit of any kind. No private interests of any kind are granted or acquired. The highway to be created or improved belongs to the public, and is open to the whole public to be used at will, and with such means of navigation as taste, pleasure or convenience may dictate." *Id.* at 587-88.

In contrast, ORS chapter 554 organizations do require "acceptance" and their "members" more resemble stockholders than citizens. ORS chapter 554 organizations may make a profit and do create private interests. The improvements are to privately owned lands, not publicly owned lands. Although empowered to impose charges on property, they do so for the benefit of their members. Not all members may agree with the acts of the governing board; nevertheless, by purchasing property subject to the organization, they voluntarily submit thereto.

ORS chapter 554 organizations appear unique. All other special districts, such as irrigation districts, can be formed with less than a unanimous vote. As noted by the court in *Nelson v. McAllister Dist. Imp. Co.*, 155 Or 95, 62 P2d 950 (1936), the distinction between the two is important. There is no doubt that an irrigation district, which can coerce taxes from minority landowners, is a governmental unit. *See also Twohy Bros. Co. v. Ochoco Irr. Dist.*, 108 Or 1, 210 P 873, 216 P 189 (1923).

■     In attempting to discern the meaning of the term "governmental unit" as used in section 11b, it is appropriate to consider the problem it was designed to remedy.

> "In determining the meaning of a statute, the particular mischief which it was designed to remedy and the history of the period and of the act itself may be considered, * * *." *Superior Oil Syndicate v. Handley*, 99 Or 146, 157, 195 P 159 (1921).

The court has reviewed the voter's pamphlet and the arguments contained therein for and against Measure 5. Although it is questionable whether the court should consider the debates and information contained in the news media and election publicity, it is appropriate to take judicial notice of historical facts which are matters of common knowledge. *City of Portland v. Bingham*, 209 Or 575, 307 P2d 492 (1957).

It is common knowledge that the public felt property taxes were far too high. Numerous school district budgets required approval by the voters on an annual basis. Frequently those budgets were defeated three and four times. The public felt property taxes were out of control, were unfair, and imposed burdens on property ownership beyond what was appropriate. These frustrations and general sentiments are manifest in the provisions of section 11b.

The measure also reflects the frustration and feelings of impotency experienced by the public in dealing with its own government. The measure places limits on taxes over which the public felt it had lost control. However, it declines to limit taxes over which the public exercises control or for which it receives a direct benefit. Specifically, incurred charges which taxpayers can control or bond issues which owners specifically vote on are excluded from the measure's

constraints. Likewise, local improvements which result in a specific benefit are excluded from the measure's constraints. The court believes this structure is significant in interpreting the measure.

ORS chapter 554 organization assessments are incurred only as a result of the voluntary act of the landowner. They are incurred to provide a direct benefit to the member's land. These characteristics strongly suggest that ORS chapter 554 organizations should not be deemed a governmental unit within the meaning of section 11b.

The court is aware that individuals may purchase land subject to ORS chapter 554 organization jurisdiction and wish it were otherwise. Petitioners in this instance appear to be landowners who purchased lots in a subdivision *after it* had become subject to respondent's jurisdiction. Nevertheless, a purchaser of land which is subject to covenants which run with the land is bound by such covenants. *Huff v. Duncan*, 263 Or 408, 502 P2d 584 (1972).

■ The court notes that section 11b uses the term "unit of government" once, the term "governmental unit" six times and the term "taxing unit" five times. It is unlikely that the drafters of the measure or the public who voted on it would attribute different meanings to those terms. That is, the measure appears designed to apply to governmental units that impose taxes. ORS chapter 554 organizations do not have the power to impose taxes in the traditional sense.[6]

■ In summary, the court finds respondent's fundamental distinguishing features are nongovernmental. Respondent's members are landowners who either agreed to be bound initially or acquired the property subject to respondent's authority. The unanimous agreement underlying the organization gave it its primary characteristic. Government, on the other hand, is characterized by majority rule. The majority imbues government with authority to coerce all for the benefit of all. Although the legislature has bestowed many characteristics of government on ORS chapter 554 organizations, they are not sufficient to bring such organizations

---

[6] It should be observed that we cannot use the measure's definition of "tax" to determine what a government unit is. Assessments imposed by condominium owners' associations would fit within the definition of a tax.

within the meaning of "governmental unit" for purposes of section 11b.

The court finds that respondent is not a "governmental unit" within the meaning of Article XI, section 11b, of the Constitution. Now, therefore,

IT IS ORDERED that respondent's Motion for Summary Judgment is granted.