# IN THE OREGON TAX COURT

IN RE Determination of the Applicability of
Article XI, section 11b, of the Oregon Constitution
to Bonded Indebtedness of the CITY OF PORTLAND
and the Portland Development Commission,
in Connection with the South Park
Urban Renewal District.

*v.*

Dorothy M. Smith,
Peter M. Smith, Henry Kane and Clyde V. Brummell

(TC 3156)

Timothy J. Sercombe, Preston Thorgrimson Shidler Gates & Ellis, represented City of Portland.

Richard M. Stephens, Pacific Legal Foundation, represented Dorothy M. Smith and Peter M. Smith.

Henry Kane appeared *pro se*.

Clyde V. Brummell appeared *pro se*.

Oliver I. Norville and Peter R. Mersereau, Rankin Mersereau & Shannon, Portland, appeared as *amicus curiae* representing The Association of Oregon Redevelopment Agencies.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, appeared as *amicus curiae* representing the Department of Revenue.

Decision rendered May 18, 1992.

**CARL N. BYERS, Judge.**

Petitioner seeks a determination of the effect of Article XI, section 11b, of the Oregon Constitution (hereinafter section 11b) on its urban renewal bonded indebtedness. Four interested persons intervened as respondents. Two *amicus curiae* also participated. This matter is before the court on Cross Motions for Summary Judgment. The court has considered the oral and written arguments of petitioner, respondents and *amicus curiae.*

## FACTS

On July 24, 1985, the City of Portland, through its urban renewal agency, the Portland Development Commission, adopted an urban renewal plan for an area identified as South Park Blocks Urban Renewal Area. The city adopted two ordinances authorizing the issuance and sale of urban renewal bonds in the total amount of $11,200,000. The bonds have been issued and sold. The bonds are payable from tax revenues "attributable to the increase in assessed valuation of all taxable property" in the urban renewal area.

ORS 305.589 authorizes petitions to this court to determine the effect of section 11b on local taxes. In accordance with that statute, petitioner asks this court to determine that section 11b does not apply to property taxes which are used to pay principal and interest on the indebtedness owed on the bonds.

## URBAN RENEWAL FINANCING

To understand the parties' arguments, it will be helpful to briefly consider how urban renewal financing works. In simplified terms, a local government adopts an urban renewal plan to improve a blighted area. Typically, the local government sells bonds to redevelop the blighted area. When the area has been redeveloped, it should have a higher value for property taxation than prior to redevelopment.

When an urban renewal plan is adopted, the assessor determines and certifies the assessed value of all the taxable property in the urban renewal area as of the assessment date immediately prior to approval of the urban renewal plan. ORS

457.430. This amount becomes the certified or "frozen value" from which the units of local government continue to collect property taxes. Taxes derived from any increase in value over the "frozen value" are dedicated to paying for redevelopment of the area. ORS 457.440(6).

Taxes for urban renewal are not levied by an urban renewal agency. Rather, they result from operation of the statutes. ORS 457.440(5)(a) directs the assessor to divide only the frozen value into the total amount of taxes levied by the taxing units to derive a tax rate. Thus, the tax rate is based on a total assessed value which is less than is actually subject to tax. The tax rate is then applied to the entire taxable value, including the value in excess of the frozen value, producing revenues in excess of the amounts levied by the taxing units. The excess is the amount, within certain limitations,[1] dedicated to payment of urban renewal development.

## PROPERTY TAX LIMITATION

Section 11b originated as an initiative measure, Measure 5, which was adopted at the November, 1990, general election. It divides taxes on property into two categories: taxes for the support of public schools and taxes for all other local governmental functions. It limits the taxes for each category by dollar amount. The amount that can be imposed for schools decreases from $15 per thousand of assessed value in 1991-92 to $5 per thousand in 1995-96 and thereafter. The amount that can be imposed for nonschool government is $10 per thousand of assessed value. Or Const, Art XI, § 11b, cl (1).

## PETITIONER'S CONTENTIONS

Petitioner claims that "money collected" (tax revenues) to pay principal and interest due on urban renewal bonded indebtedness is not subject to the limits imposed by section 11b. Petitioner advances two main arguments:

---

[1] The 1991 legislature amended ORS 457.440 to reflect its view that payments for urban renewal bonded indebtedness are not subject to the limitations of Article XI, section 11b, of the Oregon Constitution (section 11b). *See* ORS 457.440(2)(a). The legislature acknowledged that payments for other urban renewal indebtedness are subject to the limitations of section 11b. *See* ORS 457.440(2)(b).

(1) The revenue produced by the statutory scheme for urban renewal is not "imposed by a governmental unit" within the meaning of section 11b and, therefore, not a tax.

(2) Tax increment revenues used to pay principal and interest on urban renewal bonded indebtedness are authorized by Article IX, section 1c, of the Oregon Constitution and are, therefore, exempt from the limits of section 11b by virtue of section 11b, clause (3)(a).

Respondents oppose all of these contentions.

## DEFINITION OF TAX

Clause (2)(b) of section 11b defines "tax" as:

> "Any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements."

In the traditional context, a governmental unit levies or imposes a tax. Petitioner reasons[2] that since tax increment revenue occurs automatically under the statutory scheme, there is no levy or "imposition" of a tax. Petitioner also contends that for a tax to be imposed by a governmental unit, it must be imposed by a fixed rate or amount.

█ In view of the purpose of section 11b, the court does not read it so narrowly. Section 11b reflects the public's frustration and sense of impotency in trying to restrain the spending of its own local governments. The provision's structure delineates between taxes over which the public appears to have felt it lost control and charges which can be affected or controlled by the taxpayer. This delineation appears significant in interpreting the terms of section 11b.

As Respondent Brummell argued, section 11b changed the entire property tax system in the State of Oregon. It adopted broad terms intended to overcome the weaknesses found in similar laws. For example, the term

---

[2] Tax increment financing does not occur completely automatically because of the 1991 legislature's view that payments for urban renewal bonded indebtedness are not subject to the limitations of section 11b. ORS 457.440(2)(a) now requires an urban renewal agency to certify to the county assessor the amount necessary to pay bonded indebtedness.

"imposed" is broader than the term "levy." "Imposed" covers taxes which may be collected but not as a result of a levy in a traditional sense.

■ There is no doubt that tax increment revenues are taxes within the meaning of section 11b. They are a charge on property calculated by the assessor, collected by the tax collector and remitted to government entities.

> "If it were necessary to identify the taxing unit that made the political decision constituting the 'levy' on the increased property values in the urban renewal area, it would be the governmental body that decides to create the redevelopment agency and to undertake the project with the revenue so obtained, in this case the City of Portland." *Dennehy v. Dept. of Rev.*, 305 Or 595, 603, 756 P2d 13 (1988).

> Petitioner cites *Dennehy* as authority in support of its position. However, *Dennehy* concerned the effect of Article XI, section 11, of the Oregon Constitution, commonly known as the six percent limitation, on tax increment financing. That provision limits the amount a taxing unit may levy unless the voters authorize a larger levy. The provision does not define taxes. Also, the court's determination in *Dennehy* regarding tax increment financing was made in a traditional context.

■ In contrast, section 11b limits the total taxes that can be imposed on any particular property. It expressly defines taxes in a new and unique way, overthrowing traditional concepts. Moreover, Article XI, section 11c[3], of the Oregon Constitution expressly provides that the limits of section 11b are "in addition" to any limits imposed on individual taxing units by the Oregon Constitution. Thus, while section 11 limits the levy of a taxing unit, section 11b is an additional limit on the tax payable by any individual property.

**BONDED INDEBTEDNESS**

Article XI, section 11b, clause (3), of the Oregon Constitution provides:

---

[3] There may be a question as to whether Article XI, section 11c, of the Oregon Constitution is actually part of the constitution. *See Comeaux v. Water Wonderland Improvement Dist.*, 12 OTR 132, 136 n 3 (1992), *aff'd* 315 Or 562, 847 P2d 841 (1993).

"The limitations of subsection (1) of this section apply to all taxes imposed on property or property ownership *except*

"(a) *Taxes imposed to pay the principal and interest on bonded indebtedness authorized by a specific provision of this Constitution.*

"(b) Taxes imposed to pay the principal and interest on bonded indebtedness incurred or to be incurred for capital construction or improvements, provided the bonds are offered as general obligations of the issuing governmental unit and provided further that either the bonds were issued not later than November 6, 1990, or the question of the issuance of the specific bonds has been approved by the electors of the issuing governmental unit." (Emphasis added.)

This case is not concerned with general obligation bonded indebtedness falling within subparagraph (b). The only concern is with bonded indebtedness "authorized by a specific provision" of the Oregon Constitution. Petitioner contends that urban renewal bonded indebtedness is specifically authorized by Article IX, section 1c, of the Oregon Constitution (hereinafter section 1c). That provision states:

"The Legislative Assembly may provide that the ad valorem taxes levied by any taxing unit, in which is located all or part of an area included in a redevelopment or urban renewal project, may be divided so that the taxes levied against any increase in the true cash value, as defined by law, of property in such area obtaining after the effective date of the ordinance or resolution approving the redevelopment or urban renewal plan for such area, shall be used to pay any indebtedness incurred for the redevelopment or urban renewal project. The legislature may enact such laws as may be necessary to carry out the purposes of this section."

Although this provision does not mention bonds or bonded indebtedness, petitioner claims it was "linked" with urban renewal bonds and, therefore, is a specific provision authorizing bonded indebtedness.

The court finds that section 1c does not authorize bonded indebtedness even in a general way. The requirement that the provision be "specific" suggests that it must at least mention bonds or bonded indebtedness. There are many such specific provisions in the Oregon Constitution. They authorize bonds for farm and home loans to veterans, state

reforestation, higher education buildings and other projects, World War II veterans' bonus, pollution control projects, water development, housing for disabled and elderly and small scale local energy projects. *See* Article XI-A and Article XI-E through Article XI-J of the Oregon Constitution. Section 1c does not authorize any kind of bonded indebtedness. All it does is authorize a method of financing urban renewal. The only mention made with regard to debt is to "any indebtedness" incurred for urban renewal. Petitioner does not suggest that all indebtedness incurred for urban renewal is "bonded indebtedness."

■ Petitioner also claims that, under the reasoning of *In re Fadeley*, 310 Or 548, 802 P2d 31 (1990), the statutes enacted by the legislature under section 1c "are entitled to constitutional weight." However, the wording of the exemption in section 11b, clause (3), creates an obvious problem with this argument. Section 11b, clause (3), requires the authorization to be found in a specific provision of "this Constitution." Statutes, even though enacted under a constitutional provision, are not part of the Constitution. Further, the legislature had power to authorize bonded indebtedness for urban renewal prior to adoption of Article IX, section 1c.

> "The Tax Court correctly held that the Legislative Assembly did not lack authority to enact ORS 457.440 despite its apparent verbal inconsistency with Article IX, section 1c. The Legislative Assembly has plenary authority to legislate within constitutional limits and did not need authorization by Article IX, section 1c, except to allay possible doubts about such limits[.]" *Dennehy*, 305 Or at 602.

Petitioner argues that tax increment financing was inexorably linked with bonded indebtedness. Section 1c was adopted by the voters at the general election held November 8, 1960. The court has examined the ballot title, explanation and argument in favor of the measure as contained in the official voter's pamphlet. The term "bonded indebtedness" or "bonds" is not to be found in any of those statements. There is no suggestion in the voter's pamphlet that bonded indebtedness will be used or facilitated by tax increment financing.

Petitioner argues that the functional purpose of section 1c "was to facilitate and allow the issuance of urban renewal bonds." The court finds that the purpose was to allow

taxes to be split so the urban renewal portion could be devoted to payment of the costs of urban renewal.

 Petitioner seeks to add weight to its side of the scales by claiming authority for an Attorney General's Opinion. Prior to adoption of the measure, the Attorney General opined that bonded indebtedness for urban renewal was exempt from the limits of section 11b. Op Att'y Gen, No. 8216 at 75-76 (Sept 7, 1990). The opinion reached that conclusion without any details or discussion with regard to what the term "specific provision" meant. The court can give little or no weight to such an opinion. It is appropriate to remember the caution expressed by the Oregon Supreme Court in *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982), where the court stated:

> "The requirement that we give effect to the words of an enactment is doubly applicable when the law in question is a constitutional amendment adopted by the voters. There is no reliable record of what the voters intended beyond the language of the amendment itself. There are no official committees, no minutes, no formal debates. Given the fact that it is the electorate, the ultimate sovereign, which has adopted the amendment to our Constitution, we are slow to go beyond the face of the enacted language into materials not presented to the public at large."

 Petitioner also claims weight for legislative interpretation. In response to the adoption of section 11b, the 1991 Legislative Assembly revised Oregon's property tax statutes. In that connection, it amended ORS 457.440 to exclude tax increment revenues for urban renewal bonded indebtedness from the limits of section 11b. However:

> "So long as the doctrine of separation of powers remains basic in our system, the ultimate power and duty of the courts to construe the constitution must rest with the courts alone. That power should not be lightly whittled away by any rule which recognizes the power of the legislature to authoritatively construe the constitution." *State v. Kuhnhausen*, 201 Or 478, 517, 266 P2d 698, 272 P2d 225 (1954).

Petitioner argues that the "courts will defer to the Legislature's interpretation unless it is clearly erroneous." In this case, the court concludes that the legislature is clearly wrong.

## INTERPRETATION OF SECTION 11b

As noted by this court in *Comeaux v. Water Wonderland Improvement Dist.*, 12 OTR 132 (1992), *aff'd* 315 Or 562, 847 P2d 841 (1993), initiative measures enacted by the people pose particular problems for judicial interpretation. Such measures use nonlegal terms in a legal context, resulting in imprecise and sometimes ambiguous laws. Here section 11b was promoted by lay persons and adopted by the public. As a consequence, it is not a product of legal minds or professional drafting.[4]

The court cannot assume that the public knew how section 11b would be applied under various provisions of the Constitution. This is a case where the plain and ordinary meaning is to be given to the terms of an act "consistent with common sense and the overall purpose of the act." *State v. Shumway*, 44 Or App 657, 662, 607 P2d 191 (1980), *aff'd* 291 Or 153, 630 P2d 796 (1981).

As this court stated earlier:

> "Measure 5 was intended to grab government at every level and shake its purse. The arguments in the voter's pamphlet demonstrate an awareness of the measure's far-reaching effects. While it may be difficult to say what any particular segment of the population understood about the measure, it is safe to say that they were aware the ramifications could be severe." *Comeaux v. Water Wonderland Improvement Dist.*, 12 OTR at 136. (Footnote omitted.)

As Respondent Brummell points out, it is illogical to believe the public intended to place drastic limits on funding for "police and fire services, for parks and recreation, libraries, community hospitals, human services, animal control, jails, elections, planning and zoning, street lighting and on and on," including every level of public education, but would place no limits on the tax dollars available to urban renewal.

---

[4] As Professor Thomas Reed Powell is reputed to have said: "If you can think about something which is attached to something else without thinking about what it is attached to, then you have what is called a legal mind." *See* Mark R. Brown, *Correlating Municipal Liability and Official Immunity Under Section 1983*, 1989 U Ill L Rev 625, 630 (citation omitted).

## CONCLUSION

■ The court finds that the effect of a tax increment financing plan for urban renewal under ORS 457.440 is to impose taxes on property as defined by Article XI, section 11b, clause (2), of the Oregon Constitution. Such taxes are subject to the limits of section 11b unless expressly excluded or excepted therefrom.

Section 11b, clause (3)(a), excepts from the limits of section 11b taxes used to pay the principal and interest on bonded indebtedness which is authorized by a specific provision of the Constitution. Petitioner claims that section 1c is such a specific provision.

■ The court finds that section 1c is not a specific provision of the Constitution authorizing bonded indebtedness as required by section 11b, clause (3)(a). Section 1c only authorizes tax increment financing. It does not authorize bonded indebtedness.

■ Judgment will be entered declaring that all taxes imposed and collected in accordance with Article IX, section 1c, of the Oregon Constitution and ORS 457.440 are subject to the limitations of Article XI, section 11b, of the Oregon Constitution.

No costs or attorneys fees are awarded to any party.