IN THE OREGON TAX COURT

ROSEBURG SCHOOL DISTRICT,
a local government unit;
G & I Investments, an Oregon Partnership;
Horizon Motors Inc., an Oregon corporation,
dba Horizon Mazda;
Rapat, Inc., an Oregon corporation, dba Douglas Inn;
Parkway Holdings, Inc., an Oregon corporation,
dba Parkway Ford and Parkway Nissan;
Jack Mathis General Contractors, Inc.,
an Oregon corporation;
Paul Jackson Wholesale Co., Inc.,
an Oregon corporation;
Roseburg Lumber Co., an Oregon corporation;
Roseburg Resources Co., an Oregon corporation;
Old School Offices, Inc., an Oregon corporation;
and One Champion Plaza, Inc., an Oregon corporation
*v.*
CITY OF ROSEBURG
(TC 3242)

Joe B. Richards, Luvaas, Cobb, Richards & Fraser, P.C., Eugene, represented plaintiffs.

Glenn Klein, Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene, represented defendant.

Decision for plaintiffs rendered November 25, 1992.

**CARL N. BYERS, Judge.**

Petitioners are interested taxpayers seeking a determination that respondent's storm drainage fee is subject to the limits of Article XI, section 11b, of the Oregon Constitution (section 11b). Both parties filed Motions for Summary Judgment.

## STORM DRAINAGE ORDINANCE

Respondent imposes a fee for the service provided by its storm drainage system:

"Except as the fees may be reduced or eliminated under Subsection 5.40.050E, the obligation to pay storm drainage fees arises when a person responsible uses storm drainage services. It is presumed that storm drainage services are used whenever there is an improved premises." Roseburg Municipal Code § 5.40.050A.[1]

---

[1] Hereinafter cited as RMC.

The code[2] adopts 3,000 square feet of impervious surface as a unit of measure, which is referred to as an equivalent residential unit (ERU). RMC § 5.40.010. The code presumes that each single-family unit has 3,000 square feet of impervious surface. The code defines "impervious surface" as:

> "[A]ny surface area which either prevents or retards saturation of water into the land surface, or a surface which causes water to run off the land surface in greater quantities or at an increased rate of flow from that present under natural conditions pre-existent to development. Common impervious surfaces include, but are not limited to, rooftops, concrete or asphalt sidewalks, walkways, patio areas, driveways, parking lots or storage areas, graveled, oiled or macadam surfaces or other surfaces which similarly impede the natural saturation or runoff patterns which existed prior to development." *Id.*

For nonresidential property, the fee is based on one ERU for each 3,000 square feet of impervious surface. RMC § 5.040.050C.2.a. If the runoff coefficient of a parcel exceeds 60 percent, the fee is measured by the gross area of the parcel without regard to the amount of impervious surface. RMC § 5.40.050C.2.b.

The code makes the person paying respondent's water utility charges responsible for the storm drainage fee. RMC § 5.40.050B. Another person can, by written agreement, become the responsible party. *Id.* If no water service is provided to the property, the person responsible is the person with the right to occupy the property. *Id.* The person responsible may seek a reduction or elimination of the fee by showing a reduction or elimination of the runoff going into respondent's storm drains. The code permits a property owner or a person responsible to avoid or reduce the fee by installing a retention system or private drainage system.

If the fee is not paid as required, no lien is directly imposed on the property. However, the person responsible for payment of the water charge is personally liable. Significantly, in addition to other remedies, the respondent can withhold delivery of water to the property. RMC § 5.40.070.

---

[2] Although petitioners also seek a determination under the code as it existed prior to amendment on July 15, 1992, all citations are to the code as amended.

## ISSUE

The issue before the court is whether the storm drainage fee is a tax as defined by section 11b. That portion of the constitution contains its own unique definition of tax.

"(b)  A 'tax' is any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements." Or Const, Art XI, § 11b, cl (2)(b).

## RESPONDENT'S POSITION

Respondent attempted to structure its storm drainage fee to avoid the limits of section 11b. The ordinance states:

"Accordingly, the structure of the storm drainage utility is intended to be a fee for service and not a charge against property. Although this structure is intended to constitute a service charge, even if it is viewed as a charge against property or against a property owner as a direct consequence of ownership of that property, the utility's rate structure should nonetheless allow the owner to have the ability to control the amount of the charge. Similarly, the utility's rate structure should reflect the actual costs of providing the service and not impose charges on persons not receiving a service. The actual cost may include all costs the utility might incur were it in private ownership." Roseburg Ordinance 2755, § 1, ¶ 3 (June 10, 1991).

Respondent contends it has successfully avoided the limits of section 11b. It claims the fee is not imposed on the property or the property owner as a consequence of owning the property but on the water user or the user of the property. The owner is only one of several possible persons who may be responsible. The argument appears to be that because some owners may be able to escape or shift the responsibility, the charge is not against the owner as a consequence of owning the property.

■ ■  Respondent also argues that its storm drainage charge is similar to the Amusement Device Tax (ORS chapter 320) discussed in *Alien Enterprises, Inc. v. Dept. of Rev.*, 12 OTR 126 (1992). In that case, the court held the tax was not a charge on property, but was only "imposed on a person who engages in 'the *business* of display or operation * * * for gain,

benefit or advantage.' " *Id.* at 129 (quoting ORS 320.011(1)) (emphasis added). The court found the tax could be avoided by keeping the devices in storage or limiting the display to private use. *Id.* at 130.

## FEE IS A TAX

This court recently held that a storm drainage user charge imposed by the City of Gresham fell within the section 11b definition of a tax. *Dennehy v. City of Gresham*, 12 OTR 194, *aff'd on other grounds* 314 Or 600, 841 P2d 633 (1992). In *Dennehy*, the court rejected the City of Gresham's argument that the tax was conditional because the landowner chose to create the impervious surfaces. The court found the tax was not a privilege or use tax and the only way an owner could avoid it was to destroy the improvements. *Id.* at 197.

In arguing for a different conclusion here, respondent ignores reality. It is the existence of the impervious surfaces which results in the obligation for the storm drainage fee. The fee is not based on any use of property. It is unrealistic to speak as if the property had a choice as to whether it allows runoff. Where the charge is being imposed on existing property, the "choice" which can be obtained only through modification of the property is not a real choice. The court finds that the fee is a charge on property and is subject to the limits of section 11b. The fact that the remedy affects the property, *i.e.*, denial of water service, merely strengthens the conclusion. Designating who is responsible for paying the fee does not change the fact that the charge arises because of the existence of the property.

Respondent argues that the city council made a specific finding of a relationship between the use of respondent's water and the storm drainage system. The finding states:

> "The council finds that persons using water from the city's water system use substantial amounts of water for irrigating lawns and gardens, washing structures, sidewalks and parking lots, and for other acclivities which result in the discharge of runoff into the city's storm drainage facilities. These uses of water demonstrate a substantial relationship between customers' use of the city water system and their use of the city storm drainage system." Roseburg Ordinance 2755, § 1, ¶ 4.

■     While this legislative finding is entitled to deference, it is largely irrelevant.[3] The ordinance does not allow property to avoid the storm drainage fee if water use from the respondent's system is restricted or discontinued. The very title "Storm Drainage" belies any attempt to justify the charge based on water use. In fact, respondent states:

> "The City's fee is imposed as a direct consequence of only one fact: that property discharges storm water or other runoff into the *public* drainage system." (Emphasis in original.)

## INCURRED CHARGES EXCEPTION

Having determined that the storm drainage fee is a charge on property, the court must next determine if it is an "incurred charge." Section 11b excludes from its limiting definition "incurred charges."

> "(c)     'Incurred charges' include and are specifically limited to those charges by government which can be controlled or avoided by the property owner
>
> "(i)     because the charges are based on quantity of the goods or services used and the owner has direct control over the quantity; or
>
> "(ii)     because the goods or services are provided only on the specific request of the property owner; or
>
> "(iii)     because the goods or services are provided by the governmental unit only after the individual property owner has failed to meet routine obligations of ownership and such action is deemed necessary to enforce regulations pertaining to health or safety.
>
> "Incurred charges shall not exceed the actual costs of providing the goods or services." Or Const, Art XI, § 11b, cl (2)(c).

Respondent contends that its storm drainage charges qualify under either subparagraph (i) or (iii).

■     Respondent argues the fee is excluded under subparagraph (i) because an owner can control the fee by reducing or eliminating the discharge of water from the subject property. Respondent cites specific examples, including some properties of petitioners, where the fee has been avoided by

---

[3] It is also questionable since Roseburg is west of the Cascade Mountains, where natural precipitation is extensive.

draining the runoff into a creek or river or creating a private retention system. However, this argument assumes that reconstruction or modification of property is an acceptable means of avoidance. The court finds that it is not. Incurring significant costs to construct a private retention system or private drainage system is not contemplated by subparagraph (i). The "direct control" language suggests an ability to turn off or reject the services, not the requirement to modify property. Moreover, even if it were acceptable, the court questions whether it is a realistic option for the vast majority of the properties in Roseburg.

Respondent also argues that the charge qualifies under subparagraph (iii) because the proper disposal of storm water is a "routine obligation" of ownership essential to public health and safety. Respondent confuses its justification for creating a storm drainage system with the conditions allowing incurred charges under section 11b.

Subparagraph (iii) applies where an owner has allowed a situation to develop which endangers the public's health or safety. Common situations involve such items as failure to trim trees and shrubs on street corners which impair driver vision; failure to keep property free of garbage and refuse which encourages rodents and disease; or failure to cut dry grass which constitutes a fire hazard. *After* conditions such as these arise and a property owner fails to correct the condition, government is justified in imposing the services and charging the owner. Typically, these actions involve notice of the condition and an opportunity to correct it before government acts. Here, respondent already had a storm drainage system in place. Respondent is attempting to justify charging property a fee before the endangering circumstances arise. There is no violation or endangering condition which the owner can correct before the services are forced upon him or her.

## PURPOSE OF SECTION 11b

It is helpful to step back from the focused efforts of interpreting the specific words and phrases of section 11b and consider in larger context what the people intended to accomplish through that initiative measure.[4]

---

[4] For further background, *see Comeaux v. Water Wonderland Improvement Dist.*, 12 OTR 132, 136-37, *aff'd* 315 Or 562, 847 P2d 841 (1993) (1992).

It seems clear their intent was to limit the burdens imposed on property by local government. Those burdens included not just ad valorem taxes but all kinds of fees and charges. One can infer from the broad definitions used that the people anticipated local governments might try to avoid the limits of section 11b.

■ Respondent's storm drainage charge is exactly the kind of "johnny-come-lately" charge on property the public anticipated and intended to limit. Storm drainage systems are traditional municipal facilities. Like city streets, parks, street lights and street signs, storm drains are viewed as part of the infrastructure benefiting the public generally. Local governments may not avoid the limits of section 11b simply by calling something a "service" and requiring payment of a "fee." If that were the case, a city could impose a fire or police protection fee on all persons using improved property. These kinds of serpentine maneuvers, if accepted, would eviscerate the constitutional limitation. The citizens of Oregon did not intend nor should they have to abide such a result.

## STATEWIDE IMPACT

Due to the importance of section 11b, it is appropriate to comment on its statewide impact. While the court recognizes local governments are now strained to perform all their functions with limited resources, it is apparent the public intended that very result. Whether the public hoped such strain would result in greater efficiencies and increased production or a reduction in the scope of services provided, the end result is the same.

It is important to remember that section 11b was adopted as an initiative measure by angry, frustrated voters. Local governments which use sophistry, rationalization and self-justification in an attempt to evade the impact of Article XI, section 11b, do their citizens a disservice. Such efforts merely increase the public's level of distrust and frustration. If the limits imposed by section 11b are in the long term harmful and not in the public's best interest, that fact will best be demonstrated by full and good faith compliance with those limits.

## CONCLUSIONS

The court finds the storm drainage charges imposed by the respondent's ordinance constitute a "tax" as that term is defined by Article XI, section 11b, of the Oregon Constitution. These charges do not qualify as incurred charges. If they are to be imposed in the future, ORS 310.143 requires that they be certified to the tax assessor under ORS 310.060 for collection under ORS 311.255. It is too late to certify the storm drainage charges to the assessor for the 1992-93 tax year. Therefore, respondent shall cease immediately all further billing or collection efforts for storm drainage charges imposed on properties whose impervious surfaces existed prior to adoption of the ordinance. By this ruling, the court is determining that unpaid past due storm drainage charges need not be paid. Any water service which was disconnected because of nonpayment of the storm drainage charge[5] shall be reconnected immediately without charge to the user.

In their amended petition, petitioners ask to have the court to declare respondent's storm drainage regulations and resolutions void. Such action is not necessary to resolution of this matter nor is it appropriate relief to be granted under ORS 305.587. It is appropriate that respondent refund to petitioners any part of the storm drainage fee paid by petitioners which, when added to petitioners' property taxes would have exceeded the limits imposed by Article XI, section 11b, of the Oregon Constitution. Also, petitioners shall recover their costs and disbursements. Now, therefore,

IT IS HEREBY ORDERED that Petitioners' Motion for Summary Judgment is granted in part, and

IT IS FURTHER ORDERED that Respondent's Motion for Summary Judgment is denied in whole.

---

[5] If water service was disconnected for more than one reason, *e.g.*, the user also had unpaid water charges, respondent need not comply with this provision.