Mike COMEAUX,
Philip Busekist, Dori L. Kite,
Rick Arnold, James D. Knight,
Sam Quitiquit, Sandy Quitiquit,
Sandra Buhrmaster Jelinski, John A. Jelinski
and James Plog,
*Petitioners (below),*

*and*

Roy MILLER,
Ramon L. Johnson, C.H. Perrott
and Margaret Perrott,
*Appellants,*

*v.*

WATER WONDERLAND
IMPROVEMENT DISTRICT,
an Oregon corporation,
*Respondent.*

(OTC 3144; SC S39154)

847 P2d 841

Roy Miller, Raymon L. Johnson, C.H. Perrott, and Margaret Perrott, appellants *pro se*, filed briefs and waived oral argument.

Timothy J. Sercombe, of Preston Thorgrimson Shidler Gates & Ellis, Portland, filed a brief and argued the cause for respondent.

PETERSON, J.

## PETERSON, J.

In 1990, the people of Oregon adopted sections 11b to 11f, of Article XI, of the Oregon Constitution. Those constitutional provisions, popularly referred to as "Measure 5," restrict the amount of property taxes that may be imposed "by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property * * *." Or Const, Art XI, § 11b(2)(b). The issue in this case is whether defendant Water Wonderland Improvement District (WWID), an Oregon corporation created under ORS chapter 554, is a "governmental unit" within the meaning of section 11b. WWID imposes various water-related fees on landowners. The Tax Court held that WWID, in so doing, "is not a 'governmental unit' within the meaning of section 11b," *Comeaux v. Water Wonderland Improvement Dist.*, 12 OTR 132, 142 (1992), and granted summary judgment to WWID. We affirm.

On *de novo* review, ORS 305.445, we adopt these findings of fact from the Tax Court opinion:

> "Petitioners are owners of property within the Water Wonderland Improvement District (WWID). WWID is a corporation organized under ORS chapter 554 to furnish water to its members. It is authorized to impose assessments on the property of its members. In this case, * * * [WWID] has imposed (1) a special maintenance fee of $30 on all lots in the district except for seven lots in Block 57, (2) a 'nonuser' fee of $30 on all lots within the district, except the seven lots in Block 57, not using any water, (3) a seasonal user fee of $70 for all lots using water less than six months out of each year, (4) a full-time water fee of $144 on all lots with year-round occupancy and (5) a hook-up fee of $350." *Id.* at 133 (footnote omitted).

Plaintiffs allege that WWID is a "governmental unit," within the meaning of section 11b(2)(b), and that the special maintenance fee, the non-user fee, the seasonal user fee, the full-time user fee, and "that portion of a 'hook-up' fee that was in excess of the average cost of inspecting and installing a water connection" are "taxes on property and therefore subject to the limits of Section 11b, Article XI of the Oregon Constitution."

Article XI, section 11b, provides in part:

"(1) During and after the fiscal year 1991-92, taxes imposed upon any property shall be separated into two categories: One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system. The taxes in each category shall be limited as set forth in the table which follows and these limits shall apply whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis:

"* * * * *

"(2) The following definitions shall apply to this section:

"* * * * *

"(b) A 'tax' is any charge imposed by a *governmental unit* upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements.

"* * * * *

"The total of all assessments for a local improvement shall not exceed the actual costs incurred by the *governmental unit* in designing, constructing and financing the project." (Emphasis added.)

The Tax Court granted summary judgment to WWID on the ground that, insofar as the fees are concerned, it was not a "governmental unit." The Tax Court did not decide whether the fees were a "tax" within the meaning of section 11b(2)(b). This appeal followed.

■ We first must decide whether plaintiffs have standing to bring this proceeding. In 1991, the Legislative Assembly enacted ORS 305.583(1), which provides:

"Ten interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of section 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment imposed by a unit of government. For purposes of this section, 'interested taxpayers' means persons who are subject to the tax, fee, charge or assessment in question."

The Tax Court held that WWID is a "unit of government" within the meaning of ORS 305.583(1). 12 OTR at 135. We

need not decide whether WWID is a "unit of government" within the meaning of ORS 305.583(1) because, in any event, the Tax Court had jurisdiction under ORS 305.405 and 305.410.[1] As persons against whom the fees are imposed, and as owners of real property against which the fees are charged, plaintiffs have standing to bring this action. *See Chadwick v. Alexander*, 310 Or 700, 704, 801 P2d 797 (1990) (taxpayer with present financial interest has standing to contest imposition of property tax).

■     We turn to the question whether WWID is a "governmental unit" within the meaning of section 11b(2)(b) of Article XI of the Oregon Constitution. WWID is organized under ORS chapter 554. Corporations organized under ORS chapter 554 (hereinafter referred to as "554 corporations"), may be organized for one or more of the following purposes:

"(a)   Irrigating or draining land.

"(b)   Furnishing land with water for domestic use.

"(c)   Protecting land by flood control." ORS 554.020(1).

A 554 corporation may be organized either for profit, or not for profit, ORS 554.040(7). WWID is organized as a nonprofit corporation.

A 554 corporation has some powers that also are commonly possessed by governments. Those powers are:

1.   ORS 554.130(3) permits, but does not require, 554 corporations to have their assessments collected by the county assessor. After collection, the proceeds are to be "paid

---

[1] ORS 305.405 provides:

"As part of the judicial branch of state government, there is created a court of justice to be known as the Oregon Tax Court. The tax court, in cases within its jurisdiction pursuant to ORS 305.410:

"(1) Is a court of record and of general jurisdiction, not limited, special or inferior jurisdiction.

"(2) Has the same powers as a circuit court.

"(3) Has and may exercise all ordinary and extraordinary legal, equitable and provisional remedies available in the circuit courts, as well as such additional remedies as may be assigned to it."

ORS 305.410(1) provides in part:

"[T]he tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state."

over to the treasurer of the nonprofit corporation as *other taxes* are certified, assessed, collected, and paid over." ORS 554.130(3) (emphasis added).

2. A 554 corporation may issue bonds. ORS 554.220(1). Bonds issued by a 554 corporation may (but need not) be made payable at the office of the county treasurer, ORS 554.220(2), and "the corporation or the county treasurer shall disburse the funds," ORS 554.160(2).[2]

3. A 554 corporation has the power of eminent domain. ORS 554.080(4). We do not view the possession of condemnation power as determinative, whether viewed in isolation or in conjunction with other powers. Oregon law allows private corporations to condemn land in some instances. *See* Or Const, Art XI, § 4 (requiring compensation when a person's property is "taken by any corporation under authority of law"); ORS 35.215(1) (defining "condemnor" to include "a private corporation that has the power to exercise the right of eminent domain"); ORS 759.075 (condemnation by telecommunications utilities); ORS 760.060 (condemnation by railroads).

We also note that 554 corporations are defined as "districts" in ORS 198.180(3), 198.210(1), and 540.505, and that ORS 554.050 states that, if the 554 corporation is formed as a nonprofit corporation, "it may be further stated in the articles of incorporation that":

"(6) It is the intention and desire of all persons owning or having any interest in any of the described lands to organize such corporation as a public corporation of Oregon

---

[2] ORS 554.120(3) states that, "[e]xcept as otherwise provided by ORS 554.160(2), all money of the corporation shall be deposited with a convenient bank or trust company in the name of the corporation." ORS 554.160(2) states:

"The revenues apportioned to the funds pledged to the payment of bonds and obligations shall be separately held and kept and accounted for. The corporation or the county treasurer shall disburse the funds only for the purposes for which levied until the indebtedness and obligation for which the assessment was made is fully paid with interest, whereupon the remainder shall be transferred to the general fund of the corporation * * *."

That passage suggests that, notwithstanding ORS 554.130(3) (see paragraph number 1 in the text), a 554 corporation may deliver funds to the county treasurer to be "held and kept" for the payment of bonded indebtedness. We also note a possible ambiguity in ORS 554.130(3) concerning the power of for-profit 554 corporations to utilize the tax collector to collect assessments. The last sentence of ORS 554.130(3) suggests that only nonprofit corporations may use those procedures.

under the provisions of ORS 554.005 to 554.340 with the rights and privileges of a public corporation, by the unanimous voluntary consent of all persons."

The WWID articles of incorporation contain such a statement. We find no definition of "public corporation" in the Oregon Revised Statutes other than the one contained in the Municipal Audit Law, ORS 297.405(6), which defines a "public corporation" as follows:

" 'Public corporation' means a corporation the operation of which is subject to control by local government or its officers and which, at least in part, is organized to serve a public purpose of, and receives public funds or other support having monetary value from, such government."

Nothing in this record shows that WWID is a "public corporation" as defined in ORS 297.405(6). In fact, ORS 294.316(2) expressly exempts 554 corporations from the Local Budget Law.

The word "government" does not appear in ORS chapter 554. A 554 corporation cannot do things that governments commonly can — or must — do. For example, 554 corporations are not subject to special district election laws (ORS 255.012), local budget laws (ORS 294.316(2)), public contract and purchasing laws (ORS 279.011(6)), or municipal audit laws (ORS 297.405(6)). The only two powers of 554 corporations that are commonly exercised by governments — and these powers are elective — are the power to have assessments collected by the assessor and the power to have the county treasurer hold money to pay bonded indebtedness.

Concerning the collection of assessments from 554 corporation landowners, ORS 554.130(3) provides that 554 corporations may collect assessments in the way that *other taxes*" are collected. (Emphasis added.) *But see* note 2, *supra.* That phrase suggests that the exaction is a "tax," as distinguished from an assessment" or something else. Even if the exaction is a tax, that does not answer the question that we are called on to answer here: What is the *nature of the entity* that is *collecting* the "tax"? To answer that question, we examine Measure 5, because only the reach of Measure 5 is at issue here. (For example, Measure 5 could have limited taxes only in counties; cities would still collect "taxes," but their taxes would not have been affected.) To examine what the

people meant when they enacted Measure 5, we must focus on Measure 5, for it tells us that the limitations apply to charges imposed by "governmental units."

Although Measure 5 does not define "governmental unit," Measure 5 suggests that a "governmental unit" is an entity that has *electors* within it. It is premised on the concept that a *vote* of electors determines the availability of property tax revenues to covered entities. Subsection (3)(b) of section 11b allows bonds of a "governmental unit" if, among other things, "the issuance of the specific bonds has been approved by the *electors* of the issuing governmental unit." (Emphasis added.) Within Measure 5 itself, a "governmental unit" *necessarily* is an entity that has "electors." Were it otherwise, Measure 5 would have had the effect of creating two classes of government — one that could issue bonds (because it has electors) and one that could not issue bonds (because it has no electors).

Other provisions of the Oregon Constitution provide a context that supports the foregoing construction of Measure 5. Sections 11b(4) and 11c of Measure 5 refer to "taxing units."[3] "Taxing units" is a term used in section 11 of Article XI, which predated Measure 5. The texts of section 11(2)(b) and 11(3)(b)[4] show that a "taxing unit" is an entity that

---

[3] Article IX, section 11b(4) provides in part:

"[T]he taxes imposed upon such property by the taxing units * * * shall be reduced evenly * * *. The limitation imposed by this section shall not affect the tax base of a taxing unit."

Article XI, section 11c provides:

"The limits in section 11b of this Article are in addition to any limits imposed on individual taxing units by this Constitution."

[4] Article XI, section 11(2)(b) provides:

"The tax base of each taxing unit in a given year shall be one of the following:
"* * * * *

"(b)  An amount approved as a new tax base *by a majority of the legal voters of the taxing unit voting on the question* submitted to them in a form specifying in dollars and cents the amount of the tax base in effect and the amount of the tax base submitted for approval. The new tax base, if approved, shall first apply to the levy for the fiscal year next following its approval." (Emphasis added.)

Article XI, section 11(3)(b) provides:

"The limitation provided in subsection 1 of this section shall not apply to:
"* * * * *

"(b)  That portion of any tax levied which is specifically voted outside the

contains "legal voters" who must approve a tax base. We attribute to the term "taxing unit," as used in sections 11b(4) and 11c, the same meaning as the term already had in section 11 at the time of the adoption of Measure 5 — "taxing unit" contemplates the presence of "legal voters" as a definitional *sine qua non* of a taxing entity limited by Measure 5. It is unquestionable that Measure 5 drafters took into account the terms of section 11 in their drafting process, because section 11f of Measure 5 expressly controls how Measure 5 and section 11 will interact. Thus, it is reasonable to believe that the drafters used "taxing unit" in Measure 5 — not otherwise defined therein — in the same sense in which it was used in the balance of section 11.

Unlike cities, counties, and most other municipal corporations, 554 corporations have no electors or voters (in the sense that cities, counties, and some districts have electors). Unlike electors in a municipal corporation, the landowners in WWID have an "equity interest" in the corporation. Article VII, section 1(a), of the WWID bylaws provides that each member has an equity interest in the corporation based on "the amount of business done by each member in relation to the total business done by the corporation." Such an interest is similar to the interest of members of cooperative corporations. *See* ORS 62.415(1) ("proceeds or savings on patronage of the cooperative * * * shall be apportioned and distributed among those members in accordance with the ratio which each member's patronage during the period involved bears to total patronage").

From the text and context of Measure 5, we conclude that it limits taxes of entities that have "electors" or "legal voters." A 554 corporation, having no "electors" or "legal voters," is not a "governmental unit," within the meaning of section 11b(2)(b).

ORS chapter 554 corporations may, but are not required to, utilize the assessor to collect fees and assessments, and the county treasurer to pay off bonds. Although those measures may assist 554 nonprofit corporations in obtaining inexpensive financing, such nonprofit corporations

---

limitation imposed by subsection (1) of this section *by a majority of the legal voters of the taxing unit voting on the question.*" (Emphasis added.)

"remain essentially business enterprises, created by and chiefly benefiting a specific group of landowners." *See Ball v. James*, 451 US 355, 369, 101 S Ct 1811, 68 L Ed 2d 150 (1981) (water improvement district held not to exercise governmental powers). Because 554 corporations lack electors or voters and resemble private or nonprofit corporations in most respects,[5] and because there are but two ways in which 554 corporations can be said to possess powers commonly possessed by governments (and even in those two respects, 554 corporations are not required to use those powers), we conclude that WWID is not a "governmental unit" within the meaning of Article XI, section 11b(2)(b). Therefore, its assessments are not subject to the limitations found in Article XI, section 11b through 11f, of the Oregon Constitution.

The judgment of the Tax Court is affirmed.

---

[5] ORS chapter 554 mirrors ORS chapters 60 (private corporations) and 65 (nonprofit corporations) concerning articles of incorporation, filing articles of incorporation with the Secretary of State, corporate bylaws, corporate powers, boards of directors, the filing of annual reports with the Secretary of State, and dissolution by the Secretary of State. In such respects, 554 corporations strongly resemble a traditional corporation, whether for profit or not for profit.

The voting rights of members of a 554 corporation are vested in the landowners, with "one vote for each acre of land" owned by the member. ORS 554.070(2). Like voting shareholders in private corporations and voting members in nonprofit corporations, proxy voting expressly is authorized by statute. ORS 554.070(2). *See* ORS 60.231 (proxy voting permitted in for-profit corporations); ORS 65.231(1) (proxy voting permitted in nonprofit corporations). ORS 554.070(2) also expressly authorizes "voting trusts" in 554 corporations. In those respects, 554 corporations also look like private corporations, whether for profit or not for profit.