IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Donald SCHUG
and Shirley Schug,
*Plaintiffs,*

*v.*

LINCOLN COUNTY ASSESSOR,
*Defendant,*

*and*

DEPARTMENT OF REVENUE,
*Intervenor-Defendant.*

(TC-MD 000215D)

Donald Schug, Plaintiff, argued the cause *pro se*.

Peter Boris, Registered Appraiser, argued the cause for Defendant.

Douglas M. Adair and Wendy Sanderson, Assistant Attorneys General, Department of Justice, Salem, argued the cause for Intervenor-Defendant.

Decision for Plaintiffs rendered October 23, 2000.

### JILL A. TANNER, Magistrate.

Plaintiffs appeal the 1999-2000 real market value of their property identified as Lincoln County Assessor's Account No. R509938. A telephone trial was held in the above-entitled matter on Tuesday, August 15, 2000. Donald Schug appeared on behalf of Plaintiffs. Doug Adair and Wendy Sanderson, Assistant Attorneys General, appeared on behalf of Intervenor. Peter Boris, Registered Appraiser, appeared on behalf of Defendant.

Prior to convening the trial, Adair requested that the court reconsider its Order granting Plaintiffs' motion to suppress evidence (Order). Both Adair and Schug commented as to their recollections of prior communications with regard to the submission of Defendant's appraisal exhibit. The court upheld its Order filed August 14, 2000.

Adair moved to suppress Plaintiffs' evidence submitted to the court and Defendant in June 2000. Adair stated that he did not receive Schug's exhibits directly from Schug. Adair recited the court's Order which held that the court must follow its rules. Boris stated that he had provided Intervenor with a copy of all material he had received from Plaintiffs and materials he had submitted to the court on behalf of the county. Schug questioned how Adair's trial brief could

reference and refute Schug's exhibits if he had never received the exhibits. The court denied Adair's motion. Adair requested that the court's ruling be in writing. The court's oral ruling is included herein as part of its written Decision.

At the conclusion of the trial, the parties agreed that the court would receive post-trial briefs no later than Friday, September 15, 2000. On September 14, 2000, Plaintiffs filed their post-trial brief. Neither Defendant nor Intervenor filed a post-trial brief.

## STATEMENT OF FACTS

Schug testified that approximately 11 years ago he purchased four lots of platted land located in Lincoln County. The property, which was purchased from one individual was commonly referred to as Lots 1, 2, 3, and 4 of Block 18, For Far. In August 1998, Plaintiffs sold Lots 2 and 3. As a result of the pending sale, Plaintiffs requested that the assessor place Lots 1 and 4 in one property tax account and Lots 2 and 3 in a separate tax account. The county assessor complied with Plaintiffs' request. When the county assessor prepared the 1999-2000 tax roll, it adjusted the real market value (RMV) and maximum assessed value (MAV) of Plaintiffs' tax account. The county assessor concluded that Plaintiffs had partitioned their property and the property was assessed as exception value under ORS 308.156. Plaintiffs appeal claiming they did not partition their property.

Plaintiffs also appeal the RMV of their property. Schug testified that if the court finds that they did partition the property, the RMV is no more than $35,000. After discussion among the parties, the parties orally stipulated at trial that if the court concludes Plaintiffs did partition their property the RMV of Plaintiffs' property for the 1999-2000 tax year was $44,500.

## ANALYSIS

The court's analysis begins with the property tax system implemented by the Oregon voters, commonly referred to as Measure 50. For the 1997-98 tax year, which was the implementation year for Measure 50, the assessed value of property was the lesser of the MAV or RMV. Or Const, Art XI,

§ 11(1)(f). Measure 50 provides that for each successive year the MAV can increase no more than 3 percent a year. Or Const, Art XI, § 11(1)(b); *see also* ORS 308.146(1). Exceptions to that general rule were created, and Defendants allege that the following exception set forth in ORS 308.156[1] applies to Plaintiffs:

> "(1) If **property** is subdivided or partitioned after January 1 of the preceding assessment year and on or before January 1 of the current assessment year, then the property's maximum assessed value shall be established as provided under this section."

(Emphasis added.) OAR 150-308.156(5)(A)(1) provides that "[w]hen a **property** is subdivided or partitioned * * * the entire **property** is affected and a new MAV is calculated for the [**whole property tax account**]." (Emphasis added.) "Property" and "property tax account" are defined in ORS 308.142 for purposes of determining whether assessed value of property exceeds the property's MAV. "Property" means: "(a) All property included within a single property tax account * * *." ORS 308.142(1)(a). " 'Property tax account' means the administrative division of property for purposes of listing on the assessment roll under ORS 308.215 for the tax year for which maximum assessed value is being determined * * *." ORS 308.142(2).

Prior to the 1999-2000 tax year, Plaintiffs' single property tax account included four contiguous lots under Plaintiffs' ownership. In August 1998, Plaintiffs sold two of the four lots. The legal issue before the court is whether Plaintiffs "partitioned or subdivided" their property when they requested that two separate tax accounts be created to reflect their ownership of two lots and a new owner of the other two lots.

■ The terms partition and subdivision were not defined in the Measure 50 constitutional provisions nor the property tax statutes. When construing a constitutional provision enacted by initiative measure such as Measure 50, the objective of the court is to determine the intent of the voters. *Comeaux v. Water Wonderland Improvement Dist.*, 315 Or

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1997.

562, 568-69, 847 P2d 841 (1993). The best evidence of the intent of the voters is the law's text. *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982).

■ ORS 308.146 sets out several exceptions to the determination of MAV. One such exception is if the property is partitioned or subdivided. ORS 308.146(3)(b). Because neither statutory provision defines partition or subdivision, the court follows the rule that words of common usage are given their plain, natural, and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

■ Plaintiffs suggest that the court look to ORS 92.010(6) and (16) for guidance in defining partition and subdivision. Those words are defined as part of the statutory land planning provisions. The court has previously held that little reliance should be placed on those definitions because the definitions were specifically provided to apply to the statutory provisions from ORS 92.010 to ORS 92.190. *See Banks v. Multnomah County Assessor*, OTC-MD No. 000349E (Jul 31, 2000) (Small Claims).

Defendant's expert, Scott Jackson, Supervisor of the Oregon Department of Revenue's Cartographic Unit, stated in his affidavit that "[i]n my experience, the word 'partition', with respect to the assessment of property taxes, refers to the division of a tax lot into multiple tax lots." Jackson defines "tax lot" to "include multiple legal parcels of land." Jackson's definition of tax lot appears to match the statutory definition of property in ORS 308.142(1)(a). In Jackson's opinion, Schug's property, which included multiple legal parcels of land, was one tax lot. Following Jackson's definition, when Schug requested that the four legal parcels of land (lots) be placed in two separate tax accounts, Schug partitioned his tax lot.

■ Jackson's definition fails to consider that Plaintiffs' request could fall within the statutory provisions for property tax account modifications set forth in ORS 308.162(2), which provides:

"If a single property tax account is divided into two or more accounts, the maximum assessed value of all property affected by the division may not exceed the total maximum

assessed value of the affected property determined under ORS 308.146 or 308.149 to 308.166."

That statutory provision is applicable if Plaintiffs' request for an administrative division of their property does not equate to a partition or subdivide their property.

The definition of partition and subdivision must be considered within the context of other provisions of ORS 308.146. Property that is partitioned or subdivided is one of five events that could trigger the exception to the general rule for calculating MAV. *See* ORS 308.146(3). Each of the five events represents a change in value of property through improvements, partitioning, subdividing, or lot line adjustments, or the recognition of property that previously existed but was omitted from the tax rolls. The word "partition" is defined in the dictionary as "the action of parting: the state of being parted * * * to divide into parts or shares." *Webster's Collegiate Dictionary* 847 (10th ed 1997). The word "subdivide" is defined as "1: to divide the parts of into more parts 2: to divide into several parts, esp: to divided (a tract of land) into building lots * * *." *Id.* at 1171.

Defendant would ask this court to conclude that Plaintiffs' request that two of the four lots be "divided" in a separate property tax account was a partition or subdivision, creating "exception value," which under the statutory provisions permits the RMV of the remaining two lots to be determined as of January 1, 1999. Defendant relies on the fact that the definition of property is all property included within a single property tax account and two of the four lots included within Plaintiffs' single property tax account were removed.

Defendant fails to consider Plaintiffs' request for an administrative division of their property tax account in the applicable context of the statutory exceptions. Plaintiffs' request was not a partition or subdivision of their property. The partition or subdivision of the For Far residential subdivision occurred when the original parcel was platted into lots. When Plaintiffs purchased four of those lots, the partition or subdivision had already been approved and each lot was given a numerical designation. Those four lots, which have commonly been referred to as one property tax account containing Lots 1, 2, 3, and 4, have existed in the same place

with the same size, slope, and other topographical features for many years. The sale of Lots 2 and 3 did not require Plaintiffs to secure any county or state permits, and did nothing to the size, shape, and location of the remaining two lots, Lots 1 and 4. At any time prior to the enactment of Measure 50, Defendant could have individually appraised and valued any or all four of Plaintiffs' lots that were recorded under one tax account. There is nothing in the record to indicate that the county did not individually value each lot as of July 1, 1995. Plaintiffs' request to divide their four lots into two tax accounts was not a partition or subdivision that created exception value or a change in value under Measure 50. Plaintiffs' request was a property tax account modification under ORS 308.162(2) and the MAV of the two newly created property tax accounts cannot exceed the total MAV of the property prior to the modification.

## CONCLUSION

IT IS THE DECISION OF THIS COURT that Plaintiffs' property was neither partitioned nor subdivided and cannot be assessed as exception value under ORS 308.156.

IT IS FURTHER DECIDED that Intervenor's oral motion to suppress Plaintiffs' evidence is denied.

IT IS FURTHER DECIDED that the county shall correct the assessment and tax rolls to reflect Plaintiffs' property tax account modification as defined in ORS 308.162(2) with any refund due Plaintiffs to be promptly paid with statutory interest.