Argued and submitted August 11, affirmed December 14, 2011

Lissa DAVIS,
Steven Davis, Rhoda Ritter,
and Roger Ritter,
*Plaintiffs-Appellants,*

*v.*

NYE DITCH USERS
IMPROVEMENT DISTRICT,
an Oregon not for profit public corporation;
Susan Kiefer; Cathy Larson;
John Maletic; Todd Stockebrand;
and Matthew Wasson
(the Board of Directors of Nye Ditch Users
Improvement District),
*Defendants-Respondents.*

Jackson County Circuit Court
085113L2; A145738

268 P3d 749

Richard B. Thierolf, Jr., argued the cause for appellants. With him on the briefs was Jacobson, Thierolf & Dickey, PC.

David B. Paradis argued the cause for respondents. With him on the brief were Mark R. Weaver and Brophy, Schmor, Brophy, Paradis, Maddox & Weaver, LLP.

Before Haselton, Presiding Judge, and Duncan, Judge, and Walters, Judge pro tempore.

WALTERS, J. pro tempore.

**WALTERS, J. pro tempore**

In this case, plaintiffs Ritter and Davis challenge the authority of defendant Nye Ditch Users Improvement District to enter their property for the purpose of improving and repairing the Nye Ditch that traverses their property.[1] Plaintiffs Davis challenge defendant's authority to assess fees against them for that purpose. This case arose on cross-motions for summary judgment, and we affirm the trial court's judgment for defendant.

## I.  DEFENDANT'S RIGHT TO ACCESS PLAINTIFFS' PROPERTY

Defendant is an improvement district formed under ORS chapter 554, and plaintiffs Ritter and Davis own property within defendant district. In their first three claims for relief, plaintiffs contend that defendant is precluded from entering their property to make repairs and improvements to the Nye Ditch without their express permission.

We take the material facts, which are undisputed, from the record on summary judgment. The Nye Ditch is an irrigation ditch that provides water for agricultural and domestic use. The ditch provides water to approximately 140 properties and 635 acres of land. In the 1920s, neighboring landowners dug the Nye Ditch by hand, using picks, shovels, crowbars, and horses.

The Nye Ditch crosses property that plaintiffs Davis purchased in 2003 and property that plaintiffs Ritter purchased in 2006. Plaintiffs took title to their property subject to all easements of record and those apparent upon the land. Plaintiffs own water rights that permit them to take water from the Nye Ditch, and the ditch is visible on plaintiffs' property.

Defendant was formed when its articles of incorporation were filed with the Secretary of State on August 3,

---

[1] Plaintiffs also joined the members of the Board of Directors of the Nye Ditch Users Improvement District as defendants. However, throughout this opinion, our references to "defendant" are to the improvement district only.

2006. *See* ORS 554.020 (permitting incorporation for purposes of irrigating land by submitting articles of incorporation to Secretary of State). Those articles state that defendant is a "not for profit public corporation" and describe the district's purpose, in part, as follows:

"To improve, maintain, and operate ditch facilities in connection with the distribution of said water for irrigation, agricultural, domestic, or industrial uses to those persons, firms, and corporations presently obtaining water through the Nye Ditch facilities and to control and distribute water through the facilities of the Nye Ditch * * *."

Plaintiffs own land described in the articles of incorporation and are therefore members of defendant district. ORS 554.070(1).[2] Plaintiffs take water from the Nye Ditch and have paid assessments to defendant and its predecessor.

On October 8, 2008, defendant contracted with an excavation company to make repairs and improvements to the Nye Ditch. The planned work included substantial repairs on the Ritter property—specifically, realigning the ditch, trimming trees over the ditch, and installing a culvert under the Ritter driveway. Plaintiffs Ritter barred the excavation crew from entering their property to perform those repairs. Plaintiffs filed this action on October 29, 2008.

The parties filed cross-motions seeking summary judgment on plaintiffs' first three claims for relief.[3] The trial

---

[2] ORS 554.070(1) provides, in part:

"Every owner of land described in the articles of incorporation is a member of the corporation, and membership is lost or gained through a sale or purchase of any of said land, as the case may be, by which the legal title is transferred."

[3] In their first claim for relief, plaintiffs seek a declaratory judgment that defendant "has no right, title, or interest in any right of way, easement, or other basis for conducting activities on plaintiffs' property, without plaintiffs' express permission." In their second claim for relief, plaintiffs request a judicial determination that defendant lacks authority to contract for purposes of sending an excavation company onto plaintiffs' land without plaintiffs' permission. Plaintiffs' second claim for relief alleges that

"[d]efendants have no lawful authority to enter into a contract with a person, * * * for purposes of sending such a person or that person's agents or employees, onto said plaintiffs' land without said plaintiffs' permission. This is because defendants have no right, title, or interest in any right of way, easement, or other lawful basis for entering onto such land without plaintiffs' permission."

court concluded that defendant had a right to enter plaintiffs' properties to make repairs and improvements and that that right derived from three sources: (1) the easements belonging to landowners who draw water from the ditch, (2) ORS chapter 554, and (3) defendant's articles of incorporation. The trial court allowed summary judgment for defendant.

Plaintiffs assign error to that ruling and contend that they have the right to exclude defendant from their property. Summary judgment is proper when there are no issues of material fact and the movant is entitled to judgment as a matter of law. ORCP 47 C. "In an appeal from a judgment that results from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review." *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002).

In arguing that the trial court erred, plaintiffs do not challenge the scope of the repairs that defendant intends to make on the Ritter, or other, property; instead, they assert that defendant has no right whatsoever to access their property. Plaintiffs acknowledge that landowners who draw water from the Nye Ditch have easements to cross their neighbors' property to access the ditch, but argue that defendant does not. Plaintiffs also acknowledge that they are members of defendant district by virtue of ORS 554.070(1), but argue that an improvement district does not acquire the access easements or licenses of its members. Plaintiffs contend that, unless a property owner expressly grants, or the district acquires, such rights, an improvement district does not have statutory authority to enter the property of its members. That is true, plaintiffs assert, even if a district's articles of incorporation purport to grant such authority. Finally, plaintiffs contend, if defendant does have a statutory right of access, it must, but did not, adhere to statutory procedures that govern the exercise of that right.

Plaintiffs are correct to recognize the mutual rights of neighbors who construct an irrigation ditch in "common

---

In their third claim for relief, plaintiffs request an injunction against trespass and ask that the trial court order "that defendants must refrain from directing [an excavation company] from entering onto said plaintiffs' real property."

enterprise" and for "mutual benefit." When neighbors join in such an enterprise, one of the neighbors cannot convert the ditch to his or her exclusive use; the other neighbors also are entitled to use the ditch. *Foster et al. v. Foster*, 107 Or 355, 368, 213 P 895 (1923). When neighbors create and use a water system as a permanent utility, they grant each other mutual easements over their respective lands. *Luckey et ux v. Deatsman*, 217 Or 628, 634, 343 P2d 723 (1959). In *Luckey*, the court explained the circumstances necessary to the creation of such mutual easements:

> "[T]o create an easement the parties must have intended that the use of the servient land was not to be a revocable privilege. An easement is an interest in land not subject to the will of the possessor of the servient estate. * * * The reservoir and pipe lines were constructed under circumstances indicating that the parties regarded the water system as a permanent utility. The subsequent conduct of [the landowners] in connection with the use and maintenance of the system confirms that interpretation of their understanding.

> "If there were need for further support for our conclusion we point out that in this case both the servient and dominant owners joined in the construction of the water system over their respective parcels of land, with the object that both would be served by it when it was completed. From this conduct it is reasonable to infer that there were mutual grants by them of easements over their respective lands."

*Id*. Such easements, the court decided, are appurtenant to and run with the land. *Id*. at 636-37.

Plaintiffs also are correct that the rights of easement owners include the rights of repair and access. The "grant of an easement includes the right to do whatever is necessary by way of repairs, even though damage to the servient estate may result." *Baumbach v. Poole*, 266 Or 154, 157-58 n 1, 511 P2d 1219 (1973). And the right to make repairs permits entry onto another's property to access the shared water utility. *See Jewell v. Kroo*, 268 Or 103, 106, 517 P2d 657, *adh'd to on reh'g*, 268 Or 109, 518 P2d 1305 (1974) (owner of dominant estate has right to enter servient estate to do anything reasonably necessary to the proper exercise of easement); *Thompson v. Uglow*, 4 Or 369, 372 (1873) ("The general rule,

that a party who has a right of enjoyment, has also a right to enter and make necessary repairs, is essential to the enjoyment of the thing granted.").

However, as we shall explain, plaintiffs' argument that defendant lacks authority to exercise the rights of its members is unpersuasive. An improvement district formed under chapter 554 is "one of several water development and distribution organizations that emerged to facilitate irrigated agriculture throughout the West during the late-nineteenth century." *Fort Vannoy Irrigation v. Water Resources Comm.*, 345 Or 56, 67, 188 P3d 277 (2008). In the western states, the doctrine of prior appropriation "enabled irrigators to divert and use water * * * on nonriparian lands[.]" *Id.* at 66. However, the labor and capital required to appropriate water were beyond the means of individuals, necessitating collective organizational structures. *Id.* To address that need, the legislature enacted the predecessor statute to chapter 554 in 1911. Or Laws 1911, ch 172. The title for that act provided:

> "To enable land owners to incorporate themselves for the purpose of irrigation or drainage, defining their corporate powers, regulating the manner of issuing bonds, making the debts of said corporation a lien on the land of said owners and fixing the organization and annual license fees of such corporations."

*Id.*

An improvement district formed under ORS chapter 554 may organize as a nonprofit or a public corporation. ORS 554.050(6) authorizes the formation of a nonprofit corporation and provides that, if all of the members agree, they may designate the corporation as a "public corporation * * * with the rights and privileges of a public corporation[.]" No matter which form of organization is used, an improvement district has only the powers conferred by the legislature. *See, e.g.*, *City of Keizer v. Lake Labish Water Control Dist.*, 185 Or App 425, 432, 60 P3d 557 (2002) (it is well settled that water districts are "creatures of statute and can exercise only the authority that the legislature statutorily has conferred on them") (citing *Young et al. v. Gard et al.*, 129 Or 534, 548, 277

P 1005 (1929) (irrigation district is a creature of law and powers are conferred by law)); *State Highway Com. v. Efem Whse. Co.*, 207 Or 237, 241, 295 P2d 1101 (1956) (highway commission, a quasi-public corporation, is "vested with broad powers but, of course, possesses no authority other than that conferred upon it by statute").

Defendant's articles of incorporation designate defendant as a "non-profit public corporation,"[4] and we look to ORS chapter 554 to determine the extent of its authority. ORS 554.080 grants an improvement district the power to contract, to make bylaws (which must be ratified by a two-thirds vote of the members), to charge and collect fees for the maintenance and operation of the district, and to levy and collect assessments for the purpose of maintenance and operation.[5] More particularly, as relevant here, ORS 554.110

---

[4] The designation of an ORS chapter 554 corporation as a "public corporation" does not necessarily make an improvement district a governmental unit for all purposes. *Comeaux v. Water Wonderland Improvement Dist.*, 315 Or 562, 847 P2d 841 (1993). In *Comeaux*, the court determined that, for the purposes of the constitutional limits on taxation, the water improvement district was not a "governmental unit," even though it possessed certain powers that were also possessed by governmental units such as the right to have assessments collected by a county assessor, the right to issue bonds, and the power of eminent domain. The court observed that the structures of ORS chapter 554 corporations "resemble private or nonprofit corporations in most respects," *id.* at 571, and that ORS chapter 554 corporations were not subject to special district election, local budget, public contract or purchasing, or municipal audit laws, *id.* at 568. *See also Miller v. Water Wonderland Improvement District*, 141 Or App 403, 918 P2d 849 (1996), *rev'd on other grounds*, 326 Or 306, 951 P2d 720 (1998) (determining that improvement district was not a public body; therefore, public records law did not apply).

However, a chapter 554 corporation is a "local service district." *See* ORS 174.116(2)(bb) (defining a water improvement district organized under chapter 554 as a "local service district"). A "local service district" is a municipal corporation. *See* ORS 198.605 (defining local service district as municipal corporation).

Because we look to the enumerated powers of an improvement district and not to defendant's designation as a "public corporation" to resolve the issues presented in this case, it is not necessary that we explore the effects of that designation.

[5] ORS 554.080 provides, in part:

"When the articles of incorporation are filed by the Secretary of State, the persons appointed in the articles as directors, and their successors in office, associates and assigns, by the name assumed in such articles, shall thereafter be deemed a body corporate with power:

"(1) To sue and be sued.

"(2) To contract and be contracted with.

"(3) To have and use a corporate seal and to alter the same at pleasure.

"(4) To purchase, condemn by the power of eminent domain, possess and dispose of such real and personal property as may be necessary and convenient

gives an improvement district's board of directors the power to construct, operate, and maintain improvements.[6]

---

to carry into effect the objects of the corporation, and to take, hold, possess and dispose of all real and personal property donated to such corporation by the United States or by any state, territory, county, city or other municipal corporation or by any person, for the purpose of aiding in the objects of such corporation.

"(5) To appoint such subordinate officers, employees and agents as the business of the corporation may require, and prescribe their duties and compensation.

"(6) To make, establish or amend bylaws, rules and regulations, not inconsistent with the laws of the state, the articles of incorporation, or the covenants and provisions of the landowners' notice provided in ORS 554.170 to 554.190, if any is filed, prescribing the manner and mode of conducting the business of the corporation, distributing and using water in domestic use, irrigation, usage of any drainage or flood control works, and enforcing the collection of rates, tolls, charges, fees, fines and assessments, but such bylaws, rules and regulations must be ratified by two-thirds of the votes of the members of the corporation.

"(7) To prescribe, fix, make and charge and collect from the water users or those who receive the benefits of the corporation, rates, tolls, fees, fines and charges for the maintenance and operation of the corporation, for the use of water, or for the use of any of the works of the corporation, or for violation of any of the bylaws, rules and regulations of the corporation; such rates, tolls, fines, fees and charges shall be a lien on the crops * * *, and may also be made a lien upon the land to which the water was furnished, or benefit was provided * * *.

"(8) To make, levy and collect any assessment either ratably or in proportion to the benefits received as the bylaws or recorded landowners' notice may provide, upon the lands described in the articles of incorporation, for the purpose of providing the amount of money required to be raised by the corporation through such assessments for any purposes whatsoever, including maintenance and operation, estimated delinquencies on assessments, principal and interest of maturing indebtedness, and such reserve as may be necessary or provided by the bylaws, subject to the limitations, restrictions and provisions of the recorded landowners' notice."

[6] ORS 554.110 provides that

"[t]he board of directors shall have *full power and authority* to:

"(1) *Build, construct and complete any works and improvements* needed to carry out the plan of improvement of the lands described in the articles of incorporation.

"(2) In the name of the corporation, make all necessary water filings and appropriations of water for every purpose of the articles of incorporation.

"(3) *Operate and maintain such works as are necessary, convenient or beneficial for said purposes.*

"(4) Hire employees as may be required, and purchase machinery, equipment and supplies.

"(5) Generally contract with reference to any of said matters as the board may determine for the purposes and within the scope of the powers granted in ORS 554.005 to 554.340 for improving the land."

(Emphases added.)

Although those statutes do not expressly confer the power to improve and repair irrigation ditches or enter the land of its members for that purpose, we conclude that they do so by implication. As we have explained, the legislature created chapter 554 improvement districts to do collectively what is difficult for landowners to do individually—to divert and use water to irrigate and drain their lands. By expressly granting improvement districts the right to "[o]perate and maintain such works as are necessary, convenient or beneficial" for those purposes, the legislature granted improvement districts the authority necessary to carry out that power, including the right to improve and repair the works and to obtain access to them.

> "[W]here a power is conferred by an act, everything necessary to carry out that power and make it effectual and complete will be implied. Further, that which is implied in a law is as much a part of it as that which is expressed. These long-established principles of statutory construction are universally recognized[.]"

*Pioneer Real Estate Co. v. City of Portland*, 119 Or 1, 10, 247 P 319 (1926); *see also Lane Transit District v. Lane County*, 327 Or 161, 168-69 n 4, 957 P2d 1217 (1998) (express power to appoint general manager implies power to fix terms of manager's employment); *Fales v. Multnomah Co. et al.*, 119 Or 127, 133, 248 P 151 (1926) ("When a power is given by statute everything necessary to make it effectual is given by implication."). The legislature granted improvement districts the authority to act on behalf of individual landowners and to exercise, on their behalf, their common-law rights of improvement and repair and the access necessary for that purpose.

Therefore, as a chapter 554 improvement district, defendant has statutory authority to improve and repair its ditch facilities and to access the property of its members as necessary for that purpose. When it filed articles of incorporation with the Secretary of State describing its purposes as including obtaining, controlling, and distributing water through the facilities of the Nye Ditch, defendant undertook to exercise that authority. Although plaintiff is correct that a corporation cannot extend its authority through its articles of incorporation, *Oregon v. Portland Gen. Elec. Co.*, 52 Or 502,

517, 95 P 722 (1908), no extension was necessary in this case. Oregon statute granted defendant the authority it wishes to exercise.

In reaching that conclusion, we reject plaintiffs' argument that the fact that the legislature also granted improvement districts the power to purchase easements and rights of way and to exercise the power of eminent domain indicates that the legislature intended to preclude improvement districts from obtaining access to the property of their members without such purchase or acquisition. The statutes that plaintiffs cite, ORS 554.270 and ORS 554.080(4), are permissive. ORS 554.270(1) provides:

> "Whenever the board of directors of the corporation shall by resolution determine that it is to the best interest of the corporation, the board *may* enter into contracts for the purchase or option to purchase or lease, upon such terms as it determines to the best interest of the corporation, any ditch, works, improvement, easement, right of way, water right or other thing required or advantageous to the corporation for the works and improvement of the land described in the articles of incorporation within the scope of the purposes therein named."

(Emphasis added.) ORS 554.080(4) provides, in part:

> "To purchase, condemn by the power of eminent domain, possess and dispose of such real and personal property as *may* be necessary and convenient to carry into effect the objects of the corporation * * *."

(Emphasis added.)

Thus, if a district wishes to obtain and own property interests or water rights, it may acquire them. But the power to obtain and own property interests on its own behalf does not preclude an improvement district from exercising its other statutory power to act on behalf of its members to operate and maintain ditches and easements that its members own. ORS 554.110, which confers the power to operate and maintain irrigation works, does not condition the exercise of that power on an improvement district's acquisition of its own water or property rights.[7]

---

[7] A district that owns water or property rights on its own behalf may have different, and perhaps broader, rights than does a district that is limited to the

Plaintiffs' final argument is that, if chapter 554 grants defendant the right to improve and maintain the Nye Ditch, the district must adhere, and failed to adhere, to the procedures mandated by that chapter. Plaintiffs contend that to incur indebtedness for the costs of such improvements, defendant is required to follow the dictates of ORS 554.170 to 554.210.

ORS 554.210 provides that owners of land described in the articles of incorporation may, by unanimous agreement or a two-thirds vote, approve and adopt "detailed plans and specifications for the works and improving of the lands under the plan described in the articles of incorporation."[8]

---

exercise of statutory powers. However, we need not explore that difference, if any, here. Defendant has statutory authority to improve and repair the Nye Ditch and to enter the property of its members for that purpose.

[8] ORS 554.210 provides:

"(1) Owners of all the land described in the articles of incorporation may by unanimous agreement in writing, subscribed and acknowledged by them, cause to be prepared and approve and adopt detailed plans and specifications for the works and improving of the lands under the plan described in the articles of incorporation, and make a report upon the same, including an estimate of the probable cost thereof, and shall thereupon file the same with the secretary of the corporation. In such case the board of directors shall adopt a resolution briefly reciting the facts thereof and accepting, approving and adopting the same as the plan of improvement of the land described in the articles of incorporation. Such plans and specifications and report shall be the plans of the corporation for the works and improvement of the land. If the landowners do not so adopt plans and specifications and a report thereon by unanimous consent, such plans and specifications and report may be adopted by resolution at a meeting of members as provided in subsection (2) of this section.

"(2) In such case, the board of directors at any meeting of the board may adopt a resolution designating and authorizing the expenditure of a certain amount of money for preliminary investigation and report upon the plans and cost of works and construction, or repair or reconstruction of the same, or purchasing or acquiring any property, ditches, dikes, levees, plants, improvements, easements, rights of way, water rights, or other things necessary, advantageous or beneficial for improving the land under the plan described in the articles of incorporation; or they may by resolution determine and declare that such preliminary investigation and the expense thereof is unnecessary. The directors shall then secure a competent engineer, if they determine that it is necessary or desirable, who shall make such investigation, and prepare detailed plans and specifications and make a report upon the same, including an estimate of the probable cost thereof, or they may prepare detailed plans and specifications and report with an estimate of the probable cost thereof without securing an engineer. The directors shall submit the detailed plans and specifications and report to a meeting of the members of the corporation for adoption. Adoption must in that case be made by resolution passed by a two-thirds vote of all the votes to which the members may be entitled."

ORS 554.170 permits landowners who have adopted plans "as provided in ORS 554.210" to "mutually covenant and agree for the purpose of binding their respective lands, as provided in ORS 554.180."[9] ORS 554.180 and ORS 554.190 provide that, if landowners desire to enter into such covenant, they shall prepare and record a notice describing the land and stating either that the land shall be subject to any indebtedness incurred by the corporation or to the lien of any assessments thereon.[10] Finally, ORS 554.200 provides, in part, that,

---

[9] ORS 554.170 provides that

"[o]wners of all the land described in the articles of incorporation or amendments thereto may at any time after the adoption of the plans and specifications for improving the land as provided in ORS 554.210, mutually covenant and agree for the purpose of binding their respective lands, as provided in ORS 554.180. Such covenants and agreements shall attach to and run with the land for the purpose of limiting, restricting and governing the conduct of the corporation. Such covenants, limitations, restrictions and agreements must not be inconsistent with the articles of incorporation, and after the recording of the same as provided in ORS 554.190 they may not be altered, amended, modified or rescinded during the life of such corporation without the consent of landowners representing two-thirds of the lands in the district and persons having an interest in such lands and the corporation and its creditors if any there are. After the recording, the bylaws of the corporation and every act and proceeding of such corporation must be in accordance with and subject to the limitations, restrictions and provisions thereof."

[10] ORS 554.180 provides:

"(1) If the owners of all the land desire to enter into such covenant with respect to matters hereinafter provided they shall make, subscribe and acknowledge before some person authorized to take acknowledgment of deeds, a notice to whom it may concern, which notice shall contain:

"(a) A description of the land with the same particularity as is provided for in the articles of incorporation.

"(b) A statement that the owners of the described land have incorporated themselves under the corporate name of (stating such name), and that the land will be improved as described in the articles of incorporation of record in the Office of the Secretary of State and in the office where deeds and other instruments affecting the title to real property are recorded in the county where the land is situated.

"(c) A statement either that the land shall be subject to any indebtedness incurred by the corporation, or that the land shall be subject to the lien of any assessments thereon by the corporation for its works and the improvement of the land as described in the articles of incorporation under the provisions of ORS 554.005 to 554.340.

"(2) If all the landowners desire, they may therein further limit, restrict and provide with respect to said matters and the conduct of the corporation with regard to the described land by mutually determining and stating therein any or all of the following:

"[w]hen any corporation is organized pursuant to ORS 554.005 to 554.340, the board of directors and the corporation may not lawfully incur any indebtedness or obligation of such corporation, *except as otherwise provided in ORS 554.005 to 554.340*, before the landowners' notice has been executed and recorded."

(Emphasis added.)

Thus, an improvement district that seeks to incur indebtedness must follow the procedures set out in ORS 554.170 to 554.210, unless another statute in chapter 554 provides otherwise. In this case, however, plaintiffs do not challenge defendant's authority to incur indebtedness; plaintiffs challenge defendant's authority to enter their property. To answer that question, we need not decide whether defendant was required to follow the dictates of ORS 554.170 to 554.210 before incurring indebtedness. The statutes that plaintiffs cite do not refer to, much less restrict, a district's right to access its members' properties.

---

"(a) Whether all the land is uniformly and in like amount per acre or per parcel thereof benefited by the improvements; and if not so benefited they may by agreement determine and apportion the relative amount of benefits per acre or per parcel between the several parcels and portions describing the same with the same particularity as is provided for the articles of incorporation.

"(b) The whole amount of benefit per acre or per parcel which will accrue from the works and improvement proposed in the articles of incorporation. If the lands are not uniformly benefited they may determine and appraise the benefits as to the several parcels and portions of all of the land and in that case particularly describe the same and state the amount of benefits accruing to the respective portions and parcels thereof per acre or per parcel in dollars, which shall in such case be the maximum amount per acre or per parcel as a lien thereon for any purpose of the corporation other than for operation and maintenance.

"(c) The whole amount in dollars of annual benefits which will accrue per acre or per parcel from the works and improvement described in the articles of incorporation. If it has been determined that all the land is not so uniformly and equally benefited they shall in such case determine and state the amount in dollars of the annual benefit per acre or per parcel of the several parcels and portions of all the land particularly describing the same, which amount of annual benefits so determined shall be the maximum amount of assessments by the corporation per acre or per parcel made and apportioned according to such determination as a lien upon the land payable per annum inclusive of the operation and maintenance assessments, and the assessment of any land in any year in excess of these annual benefits is to the extent of such excess void."

In summary, with respect to plaintiffs' first three claims for relief, we conclude that ORS chapter 554 authorizes defendant to enter plaintiffs' properties to improve and repair the Nye Ditch. Therefore, the trial court properly granted defendant's motion for summary judgment, and properly denied plaintiffs' motion for summary judgment, on those claims.

## II. DEFENDANT'S RIGHT TO ASSESS FEES FOR COSTS OF IMPROVEMENT

Plaintiffs Davis assert three additional claims for relief alleging that defendant is prohibited from assessing fees for repairs to the Nye Ditch. Plaintiffs Davis contend that, under the terms of a 1943 agreement, landowners with pre-1923 water rights cannot be assessed for "ditch widening."[11] In those claims, plaintiffs Davis request a declaratory judgment and a judicial determination that "defendant[ ] ha[s] no authority to use funds collected from members of defendant 2006 corporation, such as plaintiffs, with water rights based on filings dated October 23, 1923, or before, for ditch widening[.]" Plaintiffs also seek an injunction ordering defendant to "refrain from using any funds collected from members of defendant 2006 corporation, such as plaintiffs, with water rights based on filings of October 23, 1923, or before, for ditch widening[.]" The parties filed cross-motions for summary judgment presenting the legal issue of the applicability of the 1943 agreement to defendant's assessments. The trial court determined that the 1943 agreement "no longer governs the activities and assessments associated with the Nye Ditch" and granted summary judgment for defendant. We agree with the trial court's determination.

We take the facts relevant to the claim of plaintiffs Davis from the undisputed evidence submitted on summary judgment. In 1943, certain property owners with existing water rights signed an agreement entitled "Agreement between Nye Ditch Users" and formed an unincorporated association called the "Nye Ditch Water Users Association"

---

[11] We note that plaintiffs Davis make no argument that defendant failed to follow *statutory* procedures for assessing fees. Therefore, we do not address whether such procedures were required or followed in this case.

(the association). Under that 1943 agreement, property owners along the ditch associated together to

> "acquire, build, construct and maintain all necessary main line ditches and to procure right-of-way therefor, and to acquire, develop and maintain any and all other rights, properties and interests that may be necessary or convenient in connection with the affairs of the Association."

The 1943 agreement provided that projects to enlarge the ditch to accommodate additional users were to be financed through assessments on property owners who purchased land with water rights acquired after October 23, 1923.[12] The 1943 agreement further provided that the 1943 agreement could not be modified and that the association would continue perpetually unless "the owners of not less than 75% of the acreage irrigated or irrigable from the ditch shall, by written agreement, otherwise provide." The 1943 agreement was made binding on the signers' "successors and assigns" and was recorded in the Jackson County property records.

In 1958, the persons who had been parties to the 1943 agreement formed a new nonprofit corporation called "Nye Ditch Users Incorporated."[13] The association assigned its assets to Nye Ditch Users Incorporated.[14]

---

[12] The 1943 agreement provided, in part:

"It is agreed that members whose right to water is based on filings bearing date subsequent to October 23, 1923, shall bear, ratably among themselves, based on irrigable acreage, the cost of enlarging, sufficiently for the purposes contemplated by this agreement, the portion of the main ditch that lies southwesterly from the syphon at the said The California Oregon Power Company dam. This provision is made because those whose lands are entitled to water, based on filings made on or prior to October 23, 1923, have paid the cost of the existing ditch and the enlargement is made necessary by reason of the water available based on filings made subsequent to October 23, 1923. The amounts of the assessments for such enlarging of said ditch shall be determined by the Association at the time and in the same manner as other assessments are determined, and the amount or amounts of the assessments for such enlargement of said ditch shall be a lien against the properties charged with the cost of such enlargement, and shall be due and payable at the same time as other assessments are due, and those liable therefor shall be entitled to the same discount for early payment, and all of the provisions of this agreement relating to the lien for charges and assessments, and in relation to delinquent assessments, shall be applicable to assessments for the cost of such enlargement of said ditch."

[13] The articles for the 1958 corporation do not state the statute under which the corporation was organized; however, ORS chapter 554 was operative at that time.

[14] The assignment provided:

The articles of incorporation of the 1958 corporation stated that the purpose of incorporating was to relocate, construct, maintain, and improve the Nye Ditch. Neither the articles nor the bylaws of the 1958 corporation included the limitation on assessments that was included in the 1943 agreement.

In 1986, Nye Ditch Users Incorporated filed restated articles of incorporation. The restated articles also provided that the corporation's purpose was to operate, construct, and maintain the ditch to benefit all users, and did not include the 1943 limitation on assessments.

On April 25, 1990, the 1958 nonprofit corporation was dissolved and a new nonprofit corporation was formed. That 1990 corporation was formed under ORS chapter 554 and was named the "Nye Ditch Users Improvement District." The articles of incorporation described the district that it created as including the property of each property owner along the Nye Ditch, including plaintiffs' predecessors-in-interest. The articles stated that the improvement district was formed to improve, maintain, and operate the Nye Ditch facilities and that the district had the authority to fix assessments to each adjoining landowner.

In 1995, unbeknownst to the members of the 1990 district, the Secretary of State administratively dissolved the 1990 district for failure to file its annual report or pay its annual fee. In 2006, the members of the 1990 district learned of the administrative dissolution, but could not reinstate the

---

"KNOW ALL MEN BY THESE PRESENTS, that Nye Ditch Water Users' Association, an unincorporated association, hereinafter called 'FIRST PARTY,' for and in consideration of Ten Dollars ($10) and other good and valuable consideration, does hereby assign, transfer, set over, deliver, grant, bargain, sell and convey unto Nye Ditch Users Incorporated, a non-profit Oregon corporation, hereinafter called 'SECOND PARTY' all of first party's right, title, lien, estate and interest in and to all of the assets, interests and rights of the first party, real, personal and mixed, of whatsoever kind or nature, and wheresoever situated, including but not limited to all rights of way and easements for ditches and the construction and maintenance therefor within Jackson County, Oregon, whether gained by grant, prescription, estoppels or in any other manner whatsoever, all accounts receivable on account of assessments made pursuant to that agreement * * *, and all other accounts and funds on hand, together with full power to collect any and all of such accounts in its own name."

corporation because more than five years had elapsed. *See* ORS 554.307(1) (corporation administratively dissolved may apply for reinstatement within five years). The members then formed another corporation, defendant here, by the identical name.

On appeal, plaintiffs Davis assert that the 1943 agreement continues to be operative because the members of the association never voted to dissolve the association in accordance with the terms of the agreement. Plaintiffs Davis assert that, when the association incorporated in 1958, the articles of incorporation of the 1958 nonprofit corporation may have changed the procedures by which the ditch users conducted their business, but did nothing to abrogate their "substantive right[s]" under the 1943 agreement. Plaintiffs Davis argue that, because the 1943 agreement was binding on "successors and assigns," and because defendant is a successor of the 1943 association, defendant is bound by the 1943 agreement.

Plaintiffs Davis misapprehend the effect of the 1943 agreement on later formed corporations. The 1943 agreement was an agreement between the persons who formed the association. That agreement governed the operation of the 1943 association. To the extent that that agreement bound the successors and assigns of those who signed the agreement, it bound them only as to the operation of the association. Later formed entities were governed by the statutes under which they were formed and their articles and bylaws, not by the agreement that governed the operation of the 1943 association.

The association may not have been dissolved according to the terms of the 1943 agreement, but, even if that association continues in existence, the terms of its operation are irrelevant in this case. Defendant is an entirely new entity that is entitled to make assessments according to the statutes, articles, and bylaws that now govern its operations. The trial court did not err in granting defendant summary judgment as to the claims of plaintiffs Davis.

In summary, we hold that defendant has the authority to enter the property of plaintiffs for the purpose of

improving and maintaining the Nye Ditch and that the challenge by plaintiffs Davis to defendant's assessment of fees is without merit.

Affirmed.