IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

REBECCA FORCE, Trustee of the William  )
Pierson Family Farm Trust,              )
                                        )
            Plaintiff,                  )   TC-MD 150290D
                                        )
        v.                              )
                                        )
JACKSON COUNTY ASSESSOR,                )
                                        )
            Defendant.                  )   **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

December 23, 2015. The court did not receive a statement of costs and disbursements within 14

days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's actions creating Account 10999493 (subject property) and

determining the subject property's real market value for the 2014–15 tax year. A trial was held

in the Oregon Tax Courtroom on October 13, 2015, in Salem, Oregon. David C. Force,

Attorney, appeared on behalf of Plaintiff, and John Pierson (Pierson) and Susan Pierson testified

on behalf of Plaintiff. Lorrie Williams, Jackson County Lead Appraiser, appeared on behalf of

Defendant, and Sara Caspagnaro (Caspagnaro), Jackson County Appraiser and Analyst, testified

on behalf of Defendant. William Johnson (Johnson), Jackson County Senior Cartographer,

testified on behalf of both Plaintiff and Defendant. Plaintiff's Exhibits 5 through 22 and

Defendant's Exhibits A through J were received without objection.

I.  STATEMENT OF FACTS

Pierson testified that William and Ruth Pierson purchased 235 acres of property (Pierson

Farm) in 1967. Pierson testified that Pierson Farm was composed of many undeveloped lots of

record, originating from its designation as a registered subdivision in 1923—including an 86.58-

acre parcel (Tax Lot 100), a 0.37-acre parcel (Tax Lot 500), and a 0.52-acre parcel (Tax Lot 400).

Pierson testified that in 2003, after the death of William and Ruth Pierson, the Pierson Farm became part of the Estate of William Pierson (Estate). Pierson testified that Tax Lot 400—a lot bordered to the north by Tax Lot 500, to the south by Main Street, and to both the east and the west by Tax Lot 100—was improved by a house and barn. Pierson testified that the property line between Tax Lots 400 and 100 ran through the foundation of the house. Pierson testified that the house and barn, as well as Tax Lots 400 and 500, were conveyed from the Estate to Rebecca Force, Martha Pierson, and John Pierson (Tenants) in 2008 as tenants in common by an unrecorded deed (2008 Deed). Pierson testified the 2008 Deed adjusted the lot line between Tax Lot 400 and Tax Lot 100, increasing the size of Tax Lot 400 from 0.52 acres to 0.87 acres, and decreasing the size of Tax Lot 100 from 86.58 acres to 86.23 acres.

Pierson testified that the Tenants retained Darrell Huck (Huck) of Hoffbuhr & Associates, a land-surveying firm located in Medford, Oregon, to survey the property and monument the property line adjustment between the two tax lots that was described in the 2008 Deed. (*See* Def's Ex B at 15.) Pierson testified that the "Map of Survey" produced by Huck, which documented the lot line adjustment between Tax Lot 400 and Tax Lot 100, was approved by the Jackson County Development Services Department (Development Services) on December 14, 2009. (*Id.*) Johnson testified that he agreed that the Development Services—not Defendant—approved the "Map of Survey," which documented the lot line adjustment.

Pierson testified that the Estate executed a Quit Claim Deed to Plaintiff on January 2, 2013 (January 2013 Deed) (*See* Def's Ex B at 2–6.) The January 2013 Deed conveyed to Plaintiff all of the Pierson Farm, except 21.30 acres of the 86.23 acres designated as Tax Lot 100

and Tax Lots 400 and 500 which already had been conveyed to the Tenants in an unrecorded deed. The Estate retained the 21.30 acres designated as Tax Lot 100, while the 64.93 acre lot held by Plaintiff was designated Tax Lot 101. (*Id.* at 7.) Pierson testified that the January 2013 Deed mistakenly omitted the legal description of the 21.30 acres from the conveyance to Plaintiff. Pierson testified that if an error had not occurred, the January 2013 Deed would have included the 21.30 acres.

Pierson testified that the Estate executed a Quit Claim Deed to Plaintiff on August 26, 2013 (August 2013 Deed). (*See* Def's Ex B at 8–13.) The August 2013 Deed conveyed to Plaintiff the 21.30 acres of the Pierson Farm that had erroneously been retained by the Estate. Johnson testified that after the August 2013 Deed was recorded, Defendant's Cartography Department determined a lot partition of Tax Lot 100 had occurred and created Tax Lot 102, the 21.30-acre land parcel (subject property). Defendant assessed the newly created Tax Lot 102 in 2014. Johnson testified that even though Development Services had approved the survey documenting the lot line adjustment in 2009, Defendant did not recognize an actionable tax assessment event under Measure 50 until the August 2013 Deed was recorded. Pierson testified that Plaintiff received the tax assessment notice from Defendant in October 2014, which stated that a new lot had been created and had been assessed property tax.

Plaintiff offered exhibits and testimony regarding the subject property's real market value. Pierson testified that the subject property was "unmarketable for sale," its use was "limited to a rental property" for farm employees and described the condition of the rental houses. (*See* Ptf's Exs 5–22 (photographs of rental houses).) Defendant's evidence regarding the subject property's real market value consisted of Capagnaro's testimony and documents she prepared. Caspagnaro testified that no comparable properties to the subject property existed, and

in the absence of comparable properties, "a general overview" of other properties for sale in the area that share some of the subject property's characteristics "might be analyzed" to determine the subject property's real market value. She testified that the subject property's real market value was $750,460 and the assessed value was $397,462. Plaintiff challenged Caspagnaro's determination of real market value, citing lack of comparability of the land sales to the subject property's land, and cost and condition of the subject property's improvements.

Plaintiff appealed the tax assessment to the Jackson County Board of Property Tax Appeals (BOPTA). The BOPTA Order, dated March 23, 2015, upheld Defendant's tax assessment. (Compl at 2.) Plaintiff filed an appeal with this court, postmarked April 22, 2015.

## II. ANALYSIS

A.    *Partition*

The court first considers whether Defendant correctly determined that a partition by deed occurred, creating a new tax lot and resulting in a tax assessment based on one of the exceptions to the general rule of Measure 50.

The court's analysis begins with the property tax system enacted by Oregon voters, commonly referred to as Measure 50. Or Const Art XI, § 11. Approved by the Oregon electorate in 1997 and implemented by ORS 308.142 to ORS 308.166 for the 1997–98 tax year, Measure 50 provides that the assessed value of property shall be the lesser of the real market value and the maximum assessed value. ORS 308.146(2).[1] The maximum assessed value can increase no more than three percent per year unless one of the exceptions set forth in ORS 308.146(3) applies:

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

"(3) Notwithstanding subsections (1) and (2) of this section, the maximum assessed value and assessed value of property shall be determined as provided in ORS 308.149 to 308.166 if:

"(a) The property is new property or new improvements to property;

"(b) The property is partitioned or subdivided;

"(c) The property is rezoned and used consistently with the rezoning;

"(d) The property is first taken into account as omitted property;

"(e) The property becomes disqualified from exemption, partial exemption or special assessment; or

"(f) A lot line adjustment is made with respect to the property, except that the total assessed value of all property affected by a lot line adjustment shall not exceed the total maximum assessed value of the affected property under subsection (1) of this section."

Defendant alleges that the subject property was partitioned and its maximum assessed value was therefore subject to redetermination according to ORS 308.156. *See* ORS 308.146(3)(b). ORS 308.156(1) states:

"If *property* is subdivided or partitioned after January 1 of the preceding assessment year and on or before January 1 of the current assessment year, then the property's maximum assessed value shall be established as provided under this section."

(Emphasis added.) *Property* and *property tax account* are defined in ORS 308.142:

"For purposes of determining whether the assessed value of property exceeds the property's maximum assessed value permitted under section 11, Article XI of the Oregon Constitution:

"(1) 'Property' means:

"(a) All property included within a single property tax account; * * *

"* * * * *

"(2) 'Property tax account' means the administrative division of property for purposes of listing on the assessment roll under ORS 308.215 for the tax year for which maximum assessed value is being determined * * *."

The term *partition* is not defined in either the Measure 50 constitutional provisions or the property tax statutes. When construing a constitutional provision enacted by initiative measure such as Measure 50, the objective of the court is to determine the intent of the voters. *See*, *e.g.*, *Comeaux v. Water Wonderland Improvement Dist.*, 315 Or 562, 568–69, 847 P2d 841 (1993) (considering other constitutional provisions as context supporting court's construction of 'what the people meant' by a voter-inititated amendment). The best evidence of the intent of the voters is the law's text. *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982) (holding court must give "preeminent attention to the language which the legislature and the people have adopted"). The court follows the rule that words of common usage are typically given their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Plaintiff suggests that the court look to ORS 92.010(3), (4), (6), and (12) for guidance in defining *partition*. In those statutes, *partition* is defined as part of the statutory land-planning provisions. The court has previously placed "little reliance" on that definition because the definition specifically applies to the statutory provisions from ORS 92.010 to ORS 92.192. *See Banks v. Multnomah County Assessor,* TC-MD 000349E at 4 n 5 (July 31, 2000). Those statutes are not applicable to the issue before this court.

The definition of *partition* must be considered within the context of other provisions of ORS 308.146. The partitioning of property is one of six events that trigger the exception to the general rule for calculating maximum assessed value. *See* ORS 308.146(3). Each of the six events represents a change in value of property—through constructing new improvements, partitioning or subdividing, rezoning, recognizing property that previously existed but was omitted from the tax rolls, disqualifying property from exemption or special assessment, or

making lot line adjustments. The word *partition* is defined as "to divide into parts or shares[.]" *Webster's Third Int'l Dictionary* 1647 (unabridged ed 2002). *See Schug v. Lincoln County Assessor* (*Schug*), TC-MD 000215D, WL 33244301 (Oct 23, 2000) (finding dictionary definition of partition applicable in absence of statutory definition).

In the case before the court, a partition did not occur in 2013. The August 2013 Deed recorded all, not a portion, of Tax Lot 100 (21.30 acres) being transferred from Estate to Plaintiff. Defendant was unaware that as of January 2, 2013, Tax Lot 100 was 21.30 acres—not 21.65 acres—because the small portion (0.35 acre) of Tax Lot 100 that was transferred to Tax Lot 400 was not recorded in 2008. Instead, it was "monumented" in a Map of Survey filed with Development Services—but not Defendant—on December 14, 2009. The August 2013 Deed did not partition Tax Lot 100; it transferred the entire tax lot to Plaintiff from Estate.

B.      *Lot line adjustment*

A lot line adjustment is defined as follows by ORS 308.149(4):

> " 'Lot line adjustment' means any addition to the square footage of the land for a real property tax account and a corresponding subtraction of square footage of the land from a contiguous real property tax account."

Plaintiff asserts that the 2008 Deed effected a lot line adjustment between Tax Lots 400 and 100, because the two lots were contiguous, and because the deed added square footage to Tax Lot 400 while subtracting the same amount of square footage from Tax Lot 100.

Administrative approval of an action as a lot line adjustment weighs in favor of a conclusion that the action constitutes a lot line adjustment, rather than a partition. *Cf. Schug*, 2000 WL 33244301; *Klein v. Jackson County* Assessor, TC-MD 080478B (August 21, 2009) (finding lot line adjustment instead of partition where county had given prior administrative approval to adjust lot line). In this case, the 2009 survey—which was taken to monument the

2008 Deed's lot line adjustment between Lot 400 and Lot 100—was approved by Development Services on December 14, 2009.

The cumulative effect of the 2008 deed and approval of Development Services in 2009 was to change the boundary of one tax lot so that the property line did not dissect the dwelling on that property. The lot line adjustment was completed years prior to 2013. A lot line adjustment is one of the exceptions listed in ORS 308.146(3). An adjustment to the tax account related to the lot line adjustment should have occurred at the time of the event, not in 2013.

C.      *Real market value*

The court need not address the subject property's real market value, having concluded that a partition did not result from recording the August 2013 Deed and a lot line adjustment did not occur in 2013.

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Defendant erroneously determined a partition had occurred resulting in the creation of a new tax lot. Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject property was not partitioned in 2013 and cannot be assessed as exception value under ORS 308.156.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that the county shall correct the assessment and tax rolls to properly state Plaintiff's Account 10999493 under ORS 308.159.

Dated this ____ day of January 2016.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on January 12, 2016.*